73 N.J. Super. 217 (1962)
179 A.2d 539
FRANK ARTURI, PLAINTIFF-APPELLANT,
v.
JOHN TIEBIE (PROPERLY KNOWN AS JOSEPH TAIBI) AND FRED DROZD, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 18, 1961.
Decided March 22, 1962.
*219 Before Judges PRICE, SULLIVAN and LEONARD.
Mr. Albert L. Cohn argued the cause for appellant (Messrs. David & Albert L. Cohn, attorneys; Mr. Daniel Crystal and Mr. Murray R. Miller on the brief).
Mr. Joseph J. Salerno argued the cause for respondent Taibi (Messrs. Celantano, Razen & Salerno, attorneys; Mr. Salerno on the brief).
No appearance for defendant-respondent Drozd.
*220 The opinion of the court was delivered by LEONARD, J.S.C. (temporarily assigned).
This is a slander case. Plaintiff appeals from an involuntary dismissal in favor of defendants after the completion of the case. Defendant Drozd has not responded to the appeal but, of course, his interests are nonetheless before us. Gnapinsky v. Goldyn, 23 N.J. 243, 250 (1957).
Plaintiff testified as follows: On September 5, 1959 at about 3 P.M., while backing his automobile out of his driveway, he was halted by a call from defendant Tiebie, a neighbor. While the latter was on the sidewalk about ten feet from plaintiff, he shouted: "Hey Frank, you'd better watch your step or you're going to get in trouble," to which plaintiff inquired: "What are you talking about?" Defendant Tiebie then, in a loud voice, said:
"You are a no good dirty guinea, and all you do is sit out in front of your house all day long and sit and whistle at all women that ride up and down the street in their cars. You even whistle at the neighbor's wives. My wife can't even walk up and down the street without your whistling at her. Not only that, you even whistle at your own wife."
Later, after running an errand, plaintiff went to the home of defendant Drozd, also a neighbor, and told him that he had learned Drozd "encouraged" Tiebie by saying "Give him hell, give him hell," and that plaintiff was "the biggest hypocrite you ever saw" and was "no damn good." Drozd's reply thereto was "I've nothing to say."
Plaintiff's wife and a friend, one George Ambrosia, who were in a screened porch of plaintiff's house at the time of the aforementioned incident, testified that they heard the defendants make substantially the above statements.
At the time of the incident plaintiff's height was 5'11 1/2" and his weight 213 lbs. He was employed as a trailer-truck driver and was a shop steward at his place of employment.
Plaintiff stated that following these outbursts, his appetite was "curbed," he stopped eating breakfast, his weight dropped *221 to 192 lbs., he became "very much upset," "very nervous," "very shocked," the thought of this incident was "always on my mind," and his loss of weight necessitated extensive alterations to his wardrobe at a cost of "roughly around forty, forty-five, fifty dollars, I don't know." His wife corroborated his loss of appetite and weight, his nervousness and added "he doesn't sleep well." Plaintiff did not lose any time at his job, nor did he consult a doctor either before or after the incident.
Throughout plaintiff's case defendants objected to his testimony as to the effect of the alleged slanderous words upon him, on the ground that the causal connection between the two had to be established by medical testimony. The court at first sustained these objections but thereafter allowed plaintiff to testify thereon "on condition that the same would be connected up and shown to be the proximate result" of these words.
At the conclusion of the case both defendants moved for an involuntary dismissal of plaintiff's cause of action. The trial judge, in granting these motions, found the words uttered by defendants were not slanderous per se, and therefore "there must be proof of special damages," and further stated:
"I do not feel that evidence which was only admitted upon the condition that it be connected up [by medical testimony] and shown to have been the proximate result of this remark, this statement, to have been made by one of two of these defendants, I don't find that connection has been established and therefore I find that no proof of actual damage has been sustained and the burden of presenting same being on the plaintiff that the plaintiff has failed to establish his case * * *."
The main thrust of plaintiff's argument herein is that the causal relationship between plaintiff's distress and defendants' slanderous words was well within the common knowledge of ordinary laymen and, therefore, there was no necessity for medical opinion to establish the same. Plaintiff *222 further argues that there was sufficient proof of special damages to warrant submission of the same to the jury.
Assuming, but not admitting, that plaintiff's first argument is sound, we find his second to be without merit.
Slander is actionable per se, that is, without charge or proof of special damages, when the false statements (1) charge commission of a crime, (2) impute certain loathsome diseases, (3) affect a person in his business, trade, profession or office, or (4) impute unchastity to a woman. Gnapinsky v. Goldyn, supra, at p. 250. If the defamatory statements are not within any of these four categories, plaintiff must prove that the utterance thereof was the legal cause of some special harm. Restatement of the Law, Torts, sec. 575, p. 185.
Appellant concedes the statements made by defendants are not slanderous per se but, as heretofore stated, he argues that a jury question was presented as to special damages. His proofs with regard thereto were that he suffered from emotional distress, loss of appetite and loss of weight which, in turn, required that he make alterations to his wardrobe.
The special harm a plaintiff must prove is harm of a material or pecuniary nature. Restatement, Torts, sec. 575, p. 185. There must be proof of a pecuniary loss or loss of some substantial or material advantage. 53 C.J.S. Libel and Slander § 268(b), p. 390.
Evidence of mental suffering or physical sickness will not alone be sufficient to show special damage to support an action for words not actionable per se, 53 C.J.S. Libel and Slander § 268(b), p. 391. Prosser on Torts (2d ed. 1955), ch. 19, sec. 93, p. 594. However, once the cause of action is established by the proof of pecuniary loss, the bars are lowered and general damages may be recovered for his (plaintiff's) wounded feeling and humiliation and resulting physical illness. In other words, such damages are insufficient in themselves to make the slander actionable, but once the cause of action is made out without them, they may be tacked on as "parasitic" *223 to it. Ibid. See Butler v. Hoboken Printing and Publ. Co., 73 N.J.L. 45, 46-47 (Sup. Ct. 1905).
Plaintiff's only effort to prove pecuniary damages was the alleged alterations to his wardrobe. The cost thereof, at best, was minimal and his testimony pertaining thereto was vague, uncertain and indefinite. It was admitted upon condition that plaintiff thereafter prove that the charge therefor was reasonable. This was not done, and in the absence thereof the testimony was not competent. Garafola v. Rosecliff Realty Co., Inc., 24 N.J. Super. 28, 43 (App. Div. 1952).
There is another fatal deficiency in plaintiff's case. His proofs indicate his sufferings were directly caused by defendants' remarks and not by their effect upon his reputation. He testified that he was always "thinking" about the statement and "always had it on my mind." "It affected my whole life." His witnesses (his wife and his friend) admitted that these remarks did not affect their opinion of him and they "still feel" that he "is as fine a man as before these remarks were made." In order to prove damages stemming from slanderous remarks, the harm must result from the conduct of a third person and not from the defamer. Restatement, Torts, sec. 575, comment (b), at p. 185. Emotional distress caused to the person slandered by his knowledge that he has been defamed is not special harm and this is so although the distress results in serious illness. Restatement, Torts, sec. 575, comment (c), at p. 187.
Plaintiff argues that on the motion made he was entitled to the benefit of all favorable testimony introduced on his behalf, including all of the reasonable inferences to be drawn therefrom. While this is sound, Krug v. Wanner, 28 N.J. 174, 179 (1958), such inferences must be rooted in evidence, Gnapinsky v. Goldyn, supra, at p. 252.
For the aforesaid reasons we conclude that the action of the trial court was correct. Affirmed. Costs in favor of defendant Tiebie.
*224 SULLIVAN, J.A.D. (concurring).
This suit is but another example of how litigious people are becoming. Here, plaintiff, a trailer-truck driver and shop steward at the trucking concern which employs him, claims that he suffered mental anguish, lost his appetite, and his weight went from 213 pounds to 192 pounds, because the defendant Tiebie called him a "dirty guinea" and said that he whistled at women.
I don't know of any defamatory connotation to the word "guinea," and there was no evidence produced at trial to show that the expression had any such meaning. Webster's International Dictionary defines "guinea" as a slang expression for an Italian immigrant. The word may be crude, and even objectionable, but in my opinion has not been shown to be defamatory. To claim defamation in the alleged statement that plaintiff whistled at women is ridiculous.
The foundation of an action for defamation is injury to one's reputation. Cole v. Richards, 108 N.J.L. 356 (E. & A. 1932). I am at a loss to understand plaintiff's claim that his reputation has suffered. This is nothing but a spite suit and should never have been brought.