179 N.J. Super. 223 (1981)
431 A.2d 173
KENNETH S. USTON, PLAINTIFF-APPELLANT,
v.
RESORTS INTERNATIONAL HOTEL, INC., DEFENDANT-RESPONDENT, AND NEW JERSEY CASINO CONTROL COMMISSION, INTERVENOR-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 9, 1981.
Decided May 11, 1981.
*224 Before Judges ALLCORN, PRESSLER and FURMAN.
Morris M. Goldings, of the Massachusetts bar, and Kenneth F. Hense argued the cause for the appellant (Mr. Goldings, H. Glenn Alberich, Hawkes & Goldings and Reed & Hense, attorneys).
*225 Joel H. Sterns argued the cause for respondent (Sterns, Herbert & Weinroth, attorneys; John M. Donnelly on the brief).
Anthony J. Sposaro argued the cause for the intervenor-respondent Casino Control Commission (R. Benjamin Cohen, General Counsel, attorney).
A brief and appendix was filed by Jack Edward Granzow, attorney for American Civil Liberties Union, amicus curiae.
The opinion of the court was delivered by ALLCORN, P.J.A.D.
This is an appeal by Kenneth Uston, a professional blackjack player, who, concededly, has developed and utilizes a system of play (card counting) which can increase a blackjack player's chances at winning at the game. The Casino Control Commission (Commission), which is responsible for promulgating the rules of the games played at the casinos, established the rules of blackjack in such a fashion that a card counter seemingly could use his special skill to advantage and equalize or better the odds normally favoring the house.
At oral argument it was conceded by Resorts that the rules of play established by the Commission may be defined in such manner so as to virtually eliminate the advantage of the card counter, but that such rules of play would necessarily slow the game and thus reduce the number of games that may be played and completed during a given period of play. In turn, this would effectively lessen the "take" of the casino on the blackjack games, all other things being equal.
The casino, aware of the card counters' advantage, decided to prohibit those players from playing blackjack and, on January 30, 1979, Uston was barred by Resorts from its blackjack tables, solely for the reason that he was a professional card counter. Uston was permitted to avail himself of any other game the casino offered.
*226 Uston appealed Resorts' action to the Commission which determined that Resorts had a common-law right to exclude any person it chose, for whatever reason it chose, relying principally upon the case of Garifine v. Monmouth Park Jockey Club, 29 N.J. 47 (1959).
In our view, the Commission's reading of Garifine extends the breadth of the decision far beyond its actual holding and effect. Garifine involved the propriety of the exclusion and expulsion of Garifine (a suspected bookmaker) from the Monmouth Park racetrack, as an undesirable. The Supreme Court's determination simply posited its stand upon "the many judicial decisions which have sustained the common-law right of race track operators to exclude suspected undesirables." (Id. at 57.
However one may define an "undesirable," there is no suggestion here that Uston is an undesirable and, as such, that he may be excluded or expelled from either the casino or simply from the blackjack games. Indeed, it is only Uston's skill as a player of blackjack that gives rise to Resorts' desire to bar him from participating as a player at the blackjack games. At the same time, Resorts concedes that the advantage that his skill brings him is largely or entirely lost in those blackjack games played with six decks of cards and where the cut card (used to mark the shuffle point) is moved further up from the bottom than is at present required by the Commission's rules of play. As noted earlier, according to Resorts the use of this procedure is not preferred in any event because it slows down play, which decreases the earnings of the casino from the blackjack operations.
We note also that the Casino Control Act directs the Casino Control Commission to compile a list of persons to be excluded or expelled from gambling casinos. The pertinent portions of the statute, N.J.S.A. 5:12-71, provide:
a. The Commission shall, by regulation, provide for the establishment of a list of persons who are to be excluded or ejected from any licensed casino establishment. *227 Such provisions shall define the standards for exclusion, and shall include standards relating to persons:
(1) Who are career or professional offenders as defined by regulation of the commission;
(2) Who have been convicted of a criminal offense under the laws of any state or the United States, which is punishable by more than 6 months in prison, or any crime or offense involving moral turpitude; or
(3) Whose presence in a licensed casino would, in the opinion of the commission, be inimical to the interest of the State of New Jersey or the licensed gaming therein, or both.
The commission shall promulgate definitions establishing those categories of persons who shall be excluded pursuant to this section, including cheats and persons whose privileges for licensure have been revoked.
........
It is manifest by the terms of the above section that it is the Commission which is solely vested with the authority to designate persons to be excluded from the casinos, under reasonable standards first established by the Commission. It is plainly implicit therein that a casino itself is not empowered to so blacklist and exclude a person  despite the apparent failure of the Commission as yet to execute this delegation of authority. Thus, even making the dubious assumption that Garifine does espouse a common-law right in a gambling casino to exclude or to expel any person who, for any reason, may be persona non grata, such common-law rule has been abrogated by the foregoing provisions of N.J.S.A. 5:12-71a delegating such authority to the Commission exclusively. Whether, under the provisions of this statute, the Commission is empowered to promulgate standards such as would exclude card counters from blackjack games at the casinos, is not now before us and we express no opinion thereon.
Accordingly, and for the foregoing reasons, the order of the Casino Control Commission of December 31, 1979, dismissing the complaint of Uston, is reversed, and the Commission hereby is directed to enter an order enjoining respondent Resorts to admit Uston to its casino and to permit him to engage in the game of blackjack wherever offered at said casino operated by Resorts.