Frank **HOAGBURG** and Janet **Hoagburg, his wife, Plaintiffs,**

v.

**HARRAH'S MARINA HOTEL CASINO, Defendant.**

Civ. A. No. 82–2140.

United States District Court, D. New Jersey.

April 30, 1984.

Frederick S. Schofield, Medford, N.J., for plaintiffs.

Jack Gorny, Horn, Kaplan, Goldberg & Gorny, Atlantic City, N.J., for defendant.

## OPINION

COHEN, Senior District Judge:

Plaintiffs, Frank Hoagburg and Janet Hoagburg, his wife, seek compensatory and punitive damages, as set forth in the ten counts of their complaint, for the following acts allegedly committed by the defendant, Harrah's Marine Hotel Casino (Harrah's), located in Atlantic City, New Jersey, against Mrs. Hoagburg: negligence, assault and battery, false arrest, defamation, breach of contract, outrageous conduct per se and unlawful violation of her rights. Mr. Hoagburg sues *per quod* for loss of his wife's services and consortium.

Presently before the Court are the defendant's motions for partial summary judgment seeking dismissal of the defamation claim, asserted in Count 6 of the complaint, the claim for alleged violation of Mrs. Hoagburg's constitutional civil rights,[1] encompassed in Count 8, and all demands for punitive damages as set forth in Counts 3, 4, 5, 6, 8, 9 and 10. Harrah's also moves for partial summary judgment as to alleged claims by Mr. Hoagburg, for damages grounded in physical injury and "psychic trauma." Joint Final Pre-Trial Order, Plaintiffs' Factual Contentions (k), (n). A cross-motion by the plaintiffs seeks partial summary judgment with regard to that portion of their claims based on Harrah's contended violation of Mrs. Hoagburg's common law right of entry onto its premises.[2] This cross motion, and portions of Harrah's motions, appear to raise some issues of first impression.[3]

On the basis of the following relevant facts and law, the Court shall grant the defendant's motion for partial summary judgment as to the defamation and constitutionally-based civil rights causes of action, as well as the claims alleging physical and psychological injuries suffered by Mr. Hoagburg. The defendant's motion, regarding the plaintiffs' demands for punitive damages, shall be denied, except with respect to those demands accruing from the defamation and constitutional causes of action, which shall be dismissed. Further, the plaintiffs' cross-motion for partial summary judgment shall be denied.

On or about August 3, 1981, Mrs. Hoagburg, accompanied by her husband, was an invitee in Harrah's casino, playing blackjack. During the course thereof, she was approached by Harrah's security officers, accused of engaging in an activity

---

1. Mrs. Hoagburg has presented claims, based on her state and federal constitutional rights, to be free from unreasonable search and seizure, and to exercise freedom of speech.

2. The plaintiffs have characterized their cross-motion as one for summary judgment. Their brief, however, addresses only one facet of their complaint, specifically, their cause of action demanding recovery based on defendant's alleged violation of Mrs. Hoagburg's common law right of entry. Therefore, the plaintiffs' cross-motion, in fact, is one for partial summary judgment.

3. Neither plaintiffs nor defendant has submitted any summary judgment motion as to those counts of the complaint including negligence, assault and battery, false arrest, breach of contract, outrageous conduct per se, and loss of consortium and services.

■

known as "card counting,"[4] and informed that she was no longer welcome to play blackjack at its casino. She was then escorted away from the blackjack tables by the security officers. The present action arose out of this incident.

Included in Count 6 of the complaint is an allegation that the defendant slandered Mrs. Hoagburg's reputation and good character when it publicly accused her of card counting and announced that she was no longer welcome to play blackjack at its casino. In its motion for partial summary judgment, Harrah's argues that its statements were not defamatory, were privileged, and caused no damage to Mrs. Hoagburg whatsoever.

■ Regardless of whether the statements were defamatory or privileged, there do not appear to be recoverable damages on this cause of action. Generally, in an action for slander, special damages must be alleged and proven in order for a plaintiff to prevail. *Arturi v. Tiebie*, 73 N.J.Super. 217, 222, 179 A.2d 539 (App.Div.1962). Evidence of mental suffering or physical sickness, without more, is insufficient. *Id.* "There must be proof of a pecuniary loss or loss of some substantial or material advantage." *Id.* An exception to this general rule occurs only when the alleged defamatory statements are actionable as slander per se. *Arturi*, 773 N.J.Super. at 222, 179 A.2d 539. Defamatory statements are slanderous per se when they: "(1) charge commission of a crime, (2) impute certain loathsome diseases, (3) affect a person in his business, trade, profession or office, or (4) impute unchastity to a woman." *Id.*

■ Card counting is not a crime. *Uston v. Resorts International Hotel, Inc.*, 89 N.J. 163, 169, 445 A.2d 370 (1982). Neither, of course, is it evidence of either some loathsome disease or unchastity. In the context of the instant action, there is no allegation that Mrs. Hoagburg's business reputation was affected by the card counting accusation. Hence, she has failed to

allege defamatory statements that are actionable as slander per se. Special damages must, therefore, be pleaded.

The complaint in this case avers that Harrah's allegedly defamatory remarks caused Mrs. Hoagburg to suffer "extreme mental anguish, humliation [sic], and acute mental and physical stress." Complaint, Count Six, ¶ 5. As previously noted, mere proof of such physical and mental discomfort is inadequate to establish special damages. Consequently, Harrah's is not subject to liability on the defamation cause of action, and summary judgment, as to this count, is appropriate and shall be granted.

Harrah's also seeks summary judgment regarding the constitutionally-based claims, presented in Count 8. It contends that it is entitled to this relief due to the lack of a specific pleading of this claim, and the absence of any state action or other facts upon which such a claim could be grounded.

■ Mrs. Hoagburg argues that she has adequately pleaded violation of her constitutional civil rights, including her First and Fourth Amendment rights, by encompassing the following language in the complaint:

> [T]he conduct of the defendant complained of herein constitutes careless, negligent, reckless, wilful, wanton and intentional violation of the rights of plaintiff, JANET HOAGBURG, violation of statutory duties and obligations, violation of the laws of the State of New Jersey, violation of regulation and authority of the New Jersey Casino Control Commission, and other governing entities
> . . . .

Complaint, Count 8, ¶ 2. This language hardly identifies which, if any, constitutional claims are being asserted. Nonetheless, the rules governing pleading in federal court are very liberal. If the facts, as alleged by a plaintiff, are sufficient to state a claim showing he is entitled to any relief,

---

**4.** Card counters keep track of the playing cards as they are dealt and adjust their betting pat-   terns when the odds appear to be in their favor.

he need not set forth the legal theory on which he relies. Fed.R.Civ.P. 8(a)(1). *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Sharpe v. Philadelphia Housing Authority,* 693 F.2d 24, 27–28 (3d Cir.1982). Hence, Mrs. Hoagburg's failure to specifically plead violation of her constitutional rights as a legal theory upon which she was relying will not bar her from pursuing such a cause of action if the facts, as averred in her complaint, would support such a claim.

However, Harrah's asserts that the facts, as depicted in the complaint, fail to demonstrate the presence of any state action and, therefore, are insufficient to state a claim entitling Mrs. Hoagburg to relief for the alleged violation of her constitutional rights. The plaintiffs respond by urging that no state action need be proven, in a case such as this, in order to find a private defendant liable. The plaintiffs support this position with citations to three cases, *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); *State v. Schmid,* 84 N.J. 535, 423 A.2d 615 (1980); and *Uston v. Resorts International Hotel, Inc.,* 89 N.J. 163, 445 A.2d 370 (1982).

▮ As a general principle, the federal constitutional guarantees of personal rights are enforceable as against federal or state governments *only,* and not as against private individuals. *See, e.g.,* Tribe, *American Constitutional Law* § 18–1 at 1147–1149 (1978). The United States Supreme Court reaffirmed the vitality of this principle most recently in *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), stating the following: "As a matter of substantive constitutional law the state action requirement reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by government.' [citations omitted.]" *Id.* at 936, 102 S.Ct. at 2754.

*Marsh* lends no support to the plaintiffs' contention that state action is not a prerequisite to an individual's recovery for violation of his constitutional rights. The plaintiff in *Marsh* had been convicted by a state court, of criminal trespass as a result of having distributed religious material in a company-owned town contrary to company rules. The Court held that the company town was identical in its overall feature to any municipally-owned town. Under such circumstances, it was determined that the state could not act to enforce a company rule that would unconstitutionally restrict the town residents' First Amendment rights any more than it could enforce a similar municipal ordinance. In reaching this conclusion, the Court reasoned that the company town was effectively public property and the company rule was effectively a municipal ordinance.

The plaintiffs, in developing their argument for a broad reading of *Marsh,* point to the following language: "The more an owner, for his own advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it." *Marsh,* 326 U.S. at 506, 66 S.Ct. at 278. From this language, the plaintiffs attempt to make the substantial leap to the expansive premise that private owners of any premises, open to the public, are liable for the compensatory claims of any guest whose constitutional rights may have been violated by the private owner's conduct.

This far reaching interpretation of *Marsh* was expressly rejected in *Lloyd Corp. v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1971), wherein the Court stated the following:

The argument reaches too far. The Constitution by no means requires such an attenuated doctrine of dedication of private property to public use. The closest decision in theory, *Marsh v. Alabama, supra,* involved the assumption by a private enterprise of all of the attributes of a state-created municipality and the exercise by that enterprise of semi-official municipal functions as a delegate of the State. In effect, the owner of the company town was performing the full spectrum of municipal powers and stood in the shoes of the State. . . .

Nor does property lose its private character merely because the public is generally invited to use it for designated purposes. Few would argue that a freestanding store, with abutting parking space for customers, assumes significant public attributes merely because the public is invited to shop there.

407 U.S. at 569, 92 S.Ct. at 2229 (footnote omitted). Thus, a careful reading of *Marsh* and its progeny makes clear that no support is provided therein for the plaintiffs' position.

■ The remaining cases, *State v. Schmid* and *Uston v. Resorts,* cited by the plaintiffs in support of their contentions that there is no state action prerequisite to recovery for violation of an individual's civil rights, are New Jersey Supreme Court cases which address rights arising from the New Jersey State Constitution and, accordingly, are not relevant on the issue of federal constitutional claims. Therefore, it appears that those of Mrs. Hoagburg's claims that are based on violation of her federal constitutional rights, in the undisputed absence of any state action, are not claims upon which she is entitled to relief. The defendant's summary judgment motion as to these claims, consequently, shall be granted. It remains for the Court to consider whether Mrs. Hoagburg's claims for violation of her state constitutional rights would, if proven, entitle her to the relief she seeks, and, consequently, to Mr. Hoagburg on his derivative cause of action.

Both *Schmid* and *Uston* have some bearing on Mrs. Hoagburg's state constitutional claims. *Schmid* involved a plaintiff who had been convicted of criminal trespass for distributing political pamphlets on a private college campus contrary to the school's rules. Those rules disallowed individuals, unconnected with the school, to enter its premises for purposes of soliciting political support. The plaintiff appealed his conviction on grounds that the college's restrictive rules violated his federal and state constitutional rights to free speech. The court determined that the plaintiff had been subjected to violation of his state con-

stitutional rights, 84 N.J. at 569, 423 A.2d 615, but expressly declined to reach the question of whether his federal constitutional rights had been violated. 84 N.J. at 553, 423 A.2d 615.

*Schmid* further held that, as a matter of state constitutional law, a private university could not impose unreasonable restrictions on individuals who desired to exercise their state constitutional free speech rights on university grounds. In reaching this decision, the New Jersey Supreme Court concluded that New Jersey State Constitutional guarantees of free speech were enforceable not only against governmental entities, but were "also available against unreasonably restrictive or oppressive conduct on the part of private entities that have otherwise assumed a constitutional obligation not to abridge the individual exercise of such freedoms because of the public use of their property." 84 N.J. at 560, 423 A.2d 615.

In *Uston,* the plaintiff had been excluded from the defendant casino's blackjack tables due to the fact that he was a card counter. He challenged the casino's legal authority to exclude him on this ground and sought a court order to compel the casino to allow him to play blackjack on its premises.

The New Jersey Supreme Court held, in *Uston,* that the defendant, Resorts International Hotel, Inc. (Resorts) located in Atlantic City, New Jersey, by excluding Uston for card counting, had acted in contravention of the state statutory scheme, the Casino Control Act, N.J.S.A. §§ 5:12–1 to 12–150 (West Supp.1983–84), which governs the conduct of casino operators. Under that scheme, as perceived by the court, only the Casino Control Commission may establish rules governing the playing of card games in casinos. In this regard, the Court noted the following:

These exhaustive statutes and regulations make clear that the Commission's control over the rules and conduct of licensed casino games is intended to be comprehensive. The ability of casino operators to determine how the games will

be played would undermine this control and subvert the important policy of ensuring the "credibility and integrity of the regulatory process and of casino operations." N.J.S.A. 5:12–1(b). The Commission has promulgated the blackjack rules that give Uston a comparative advantage, and it has sole authority to change those rules. There is no indication that Uston has violated any Commission rule on the playing of blackjack. N.J.A.C. 19:47–2.1 to –2.13. Put simply, Uston's gaming is "conducted according to rules promulgated by the Commission." N.J.S.A. 5:12–100(e). Resorts has no right to exclude Uston on grounds that he successfully plays the game under existing rules.

89 N.J. at 169–70, 445 A.2d 370 (footnote omitted). Therefore, Resorts could not bar Uston from its blackjack tables unless permitted to do so pursuant to a regulation promulgated by the Casino Control Commission. No such regulation had been promulgated as of the date Uston was decided.[5] Accordingly, the court found that Resorts had acted without legal authority.

In the course of its analysis, the court, in dicta, also discussed the extent to which Resorts' common law right of exclusion and the public's corresponding common law right of reasonable access survived the enactment of the Casino Control Act. It was noted that the current majority rule among the states is to disregard the common law right of access and permit the owner of an entertainment enterprise to exercise an absolute right of exclusion. In New Jersey, however, the court noted a trend towards a growing concern for the public's right of access. The court referred to its earlier decision in *Schmid* and found that the right at issue there, namely, the constitutional right to distribute literature on a private university campus, was analogous to an issue involving the common law right of exclusion.

In *Schmid*, the court had balanced the university's property rights against the individual's constitutional rights of free speech. In *Uston*, this balancing approach was found to have equal applicability in addressing a conflict between a casino's common law right of exclusion and its patron's common law right of reasonable access. It was concluded that, in the context of unruly patrons, the casino's right of exclusion was not restricted by any contrary right of access. However, the right of access being exercised by a peaceful patron, such as *Uston*, would be superior to the casino's right of exclusion even though he was a card counter possessing skills that could reduce the casino's profits. In any event, as the casino's right of exclusion was superceded by the Casino Control Act, and, as neither that Act nor any regulation promulgated pursuant to it permitted Resorts to exclude card counters, Resorts, as a matter of statutory law, had no such right and Uston's common law right of reasonable access remained intact.

Finally, *Uston* observed that even if there were a regulation permitting exclusion of card counters, there might be constitutional infirmities with such an exclusion. However, having determined that Uston was entitled to the relief he sought, without reference to the impact of Resorts' conduct on his constitutional rights, the court declined to further explore any such possibilities.

Unlike the plaintiff in *Uston*, Mrs. Hoagburg in the case at bar seeks money damages, rather than injunctive relief, accruing as a result of her alleged unlawful exclusion from the defendant's blackjack tables. She asserts damages on the basis of violation of her state constitutional rights as one of the bases upon which Harrah's may be liable. The defendant seeks summary judgment with regard to this portion of the plaintiffs' case. This Court must, therefore, now address the question left open in *Uston*, that is, whether the exclusion of a card counter by the private owner of a public casino is an act in contravention of state constitutional law. This issue appears to be one of first impression.

**5.** To date, the Casino Control Commission has still promulgated no such regulation.

In *Schmid*, the court applied a balancing test in determining whether the restrictive practices of the private university unconstitutionally impinged upon the plaintiff's right of free speech. The court listed the following as factors to be weighed:

(1) the nature, purposes, and primary use of such private property, generally, its "normal" use, (2) the extent and nature of the public's invitation to use that property, and (3) the purpose of the expressional activity undertaken upon such property in relation to both the private and public use of the property.

The primary purpose of a casino, such as the defendant's, is, of course, a profit-oriented one achieved through the provision of entertainment, in the form of gambling, to its patrons in exchange for the opportunity to win profits from their gambling activities. Unlike the university defendant in *Schmid*, the casino is, clearly, not a forum established for the purpose of facilitating the exchange of ideas, but, rather, is a center established for the exchange of money.

[8] The patrons of a casino presumably recognize that their invitation to gamble is limited in the manner and within the context of the rules enforced by the casino. The purpose for which patrons employ card counting techniques does not, initially, appear to be expressional in nature. Rather, its typical purpose is to improve the odds for winning in favor of the casino patron, and, thus, serves a profit-oriented, and not a communication-oriented end.[6] In any case, it is a form of activity having only minimal, if any, expressional objective. In light of card counting's limited significance as speech, the need and expectation that casino games will be regulated, and the fact that casinos are not traditional forums for the exchange of ideas, it does not appear, under the *Schmid* balancing test, that there is any violation of a patron's

state constitutional right of free speech when a casino forbids that patron from utilizing card counting techniques at its blackjack tables. Hence, the defendant's exclusion of Mrs. Hoagburg from its blackjack tables, because she was believed to be a card counter, did not effect a violation of her state constitutional right of free speech. The defendant's motion for summary judgment as to this cause of action shall, therefore, be granted.

■ Mrs. Hoagburg also argues that her Fourth Amendment search and seizure rights have been violated. She points to no case, however, providing for enforcement of these rights, or their analogous rights, under the New Jersey State Constitution, N.J. Const. art. I, § 7, in the absence of state action. As previously discussed, no such *enforcement* is generally available under the federal constitution. The Fourth Amendment, in particular, is directed at government, and not private, activity. *Burdeau v. Dowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921).

[10] The New Jersey Supreme Court has recognized that the language of the New Jersey State Constitution, as it applies to unlawful search and seizures, is virtually identical to that of the Fourth Amendment of the federal constitution. *See, State v. Kasabucki*, 52 N.J. 110, 115 n. 1, 244 A.2d 101 (1968). New Jersey courts have construed this section of their state constitution to have the same effect as the Fourth Amendment. *See e.g., Kasabucki.* This court will not depart from that approach without some indication that the New Jersey courts would sanction such a departure. Accordingly, in the absence of state action, the plaintiffs will not be entitled to relief on the basis that Mrs. Hoagburg's *federal or state constitutional rights* against unreasonable search and seizure have been violated. The defendant is enti-

---

6. There may be considerable doubt whether card counting can properly be characterized as speech rather than as non-communicative conduct. *See generally,* Tribe, *American Constitutional Law* § 12–7 at 600–601 (1978). Nonetheless, even assuming card counting to be a form

of speech for purposes of this opinion, the Court concludes that the defendant's restrictions on card counting are not unconstitutional. This decision, thereby, obviates any need to inquire further into the speech characteristics of card counting.

tled to summary judgment as to these constitutionally based claims.

The defendant also requests summary judgment as to the punitive damages demanded by the plaintiffs amidst the various counts of their complaint, including those pleading the following causes of action: negligence, assault and battery, false arrest, defamation, wanton and wilfull violation of Janet's legal rights,[7] outrageous conduct per se, and loss of services and consortium.

■ Punitive damages will be available if the plaintiffs prove, at trial, that Harrah's alleged wrongful acts were committed deliberately and with reckless disregard of the known likelihood that harm could result therefrom. *Berg v. Reaction Motors Division*, 37 N.J. 396, 414, 181 A.2d 487 (1962). There is a factual dispute between the parties, in the case at bar, centering on the manner in which Mrs. Hoagburg was treated by the defendant's security officers and, consequently, whether their behavior was adequately severe to justify punitive damages. Under such circumstances, summary judgment is inappropriate. Thus, the defendant's motion as to the plaintiffs' punitive damage claims shall be denied.

Finally, the defendant requests summary judgment as to those of Mr. Hoagburg's claims based on physical injury or "psychic trauma." Mr. Hoagburg, in response, asserts that no such claim has been included in the complaint and, therefore, defendant's motion cannot be granted.

■ Harrah's is entitled to move for summary judgment as to any claim "asserted" against it. Fed.R.Civ.P. 56(b). Mr. Hoagburg correctly notes that there is no claim, in the complaint, demanding damages based on any alleged physical or psychological injury. Nonetheless, a statement is contained in the Joint Final Pre-Trial Order, seeking damages for the purported depression suffered by Mr. Hoagburg as

a result of Harrah's alleged wrongful conduct. Additionally, there is, added as a factual contention in the same Order, the representation that Mr. Hoagburg has suffered "psychic trauma" as a result of Harrah's acts. A Joint Final Pre-Trial Order, once filed, supercedes the pleadings. *Basista v. Weir*, 340 F.2d 74, 85 (3d Cir.1965). By listing the aforesaid damages and factual contentions in the Order, Mr. Hoagburg has "asserted" the claims against Harrah's for which it now seeks summary judgment.

In support of its motion, Harrah's has submitted a record of portions of Mr. Hoagburg's deposition testimony. Therein, he admits that he is not a "nervous type individual," Mr. Hoagburg's dep. at 45, and that the incident at Harrah's casino has not resulted in causing him any mental discomfort when he now chooses to enter a casino and play cards. *See*, Mr. Hoagburg's dep. at 44, 45, 49. Harrah's further states that Mr. Hoagburg has produced, in preparation for trial, neither medical nor other evidence to indicate that he has suffered either physical or psychological injuries.

■ The plaintiffs do not dispute Harrah's contention that there is no evidence available to establish any physical or psychological injuries on Mr. Hoagburg's part. Under these circumstances Harrah's is entitled to the relief it requests as to this aspect of the plaintiffs' case. Accordingly, Harrah's will be granted summary judgment as to claims asserted against it based on alleged physical or psychological injuries suffered by Mr. Hoagburg.

The plaintiffs also seek partial summary judgment. They urge that, pursuant to the decision rendered by the New Jersey Supreme Court in *Uston*, the defendant cannot rely on the common law right of exclusion to justify its refusal to allow Mrs. Hoagburg to play blackjack on its premises. Consequently, they argue, Harrah's is liable, as a matter of law, for violating Mrs. Hoagburg's common law right of reasonable access onto its premises.

---

**7.** To the extent that the Court has herein granted summary judgment to the defendant for the causes of action based on defamation, and on

the alleged violation of Mrs. Hoagburg's constitutional rights, the claims for punitive damages on these bases are also, necessarily, dismissed.

In dicta, the court in *Uston* declared that the common law right of exclusion, as exercised by an owner of an amusement enterprise, is not an absolute right. *Uston*, 89 N.J. at 170–74, 445 A.2d 370. The court perceived this right as limited to condoning reasonable exclusions only, such as those necessary to maintain the peace of security of the premises. *Id. See also, Marzocca v. Ferone*, 93 N.J. 509, 516, 461 A.2d 1133 (1983). Applying these restrictions to the exclusion of a card counter, it was concluded that: "Absent a valid contrary rule by the [Casino Control] Commission, [the card counter] possesses the usual right of reasonable access to [the casino's] blackjack tables." 89 N.J. at 174, 445 A.2d 370.

The defendant in the instant case does not dispute that Mrs. Hoagburg's exclusion from Harrah's blackjack tables, viewed in the light of *Uston*, was a violation of her right of reasonable access. Harrah's contends, however, that the dicta in *Uston* should only be given prospective, and not retroactive, effect.

Prior to Mrs. Hoagburg's exclusion, the Casino Control Commission (Commission)[8] had dismissed a complaint by Kenneth Uston, a patron of another Atlantic City, New Jersey casino, Resorts, which complaint had sought to challenge Resorts' legal authority to exclude card counters from its casino premises. *See* Final Order of Casino Control Commission, Docket No. 79–2. Thereafter, Resorts continued its policy of excluding card counters, in reliance on the Commission's disposition of Uston's complaint, and in reliance on a letter it had received from the Chairman of that Commission expressing the opinion that no statute or regulation barred Resorts from excluding card counters. *See*

*Uston*, 89 N.J. at 167, 445 A.2d 370. It seems that other Atlantic City casinos, including Harrah's, also relied on these Commission representations and an industry-wide policy arose excluding card counters. 89 N.J. at 167 n. 2, 445 A.2d 370.

Some three months prior to Mrs. Hoagburg's exclusion, the Commission's order dismissing Uston's complaint was reversed. *Uston v. Resorts International Hotel, Inc.*, 179 N.J.Super. 223, 431 A.2d 173 (App.Div.1981), *aff'd*, 89 N.J. 163, 445 A.2d 370 (1982). However, the Appellate Division's order directing Resorts to allow Uston entry to its card tables was temporarily stayed pending the outcome of Resorts' appeal to the New Jersey Supreme Court. *See*, 89 N.J. at 175, 445 A.2d 370. Hence, the original decision of the Commission, finding that casinos could legally exclude card counters, was still temporarily in effect at the time that Harrah's barred Mrs. Hoagburg from playing at its blackjack tables.[9] The issue now before this Court is whether Harrah's conduct should be viewed under the state of law as it was when Mrs. Hoagburg's exclusion occurred, or rather under the subsequent New Jersey Supreme Court decision that finally overruled the relevant, original Commission's decision.

New Jersey courts take into consideration several factors when deciding whether to give retroactive effect to a judicial decision that has announced a new rule of law. The reasons that might justify a decision to give only prospective effect to a new rule were recently described by the New Jersey Supreme Court as follows:

> The most significant ground is the avoidance of the unfair surprise that may be visited upon persons who had justifiably

**9.** It should be noted that the New Jersey Supreme Court continued the temporary order allowing Resorts to exclude Uston, as a card counter, from its casino for another 90 days after the date of its own decision in order to allow time for the Commission to adopt a regulation permitting such exclusion, should it have chosen to do so before the court's decision went into effect. 89 N.J. at 175, 445 A.2d 370.

relied upon prior decisions. Substantial justice might be achieved only by respecting these expectations. A second reason ... is the adverse effect retrospectivity may have on the administration of justice. A third factor requires identification of the purposes of the new rule and their relationship to retrospectivity: will those purposes be advanced by retroactive application of the new principle?

*Mirza v. Filmore Corp.*, 92 N.J. 390, 397, 456 A.2d 518 (1983).

In *Mirza*, the court was confronted with the question of whether to give retroactive effect to a recent court decision that, departing from precedent, imposed upon owners of business properties abutting public sidewalks a duty to maintain these sidewalks in a safe condition, and held that they could be found liable to pedestrians injured on an unsafe sidewalk. The court noted that retroactive application of such a decision would facilitate its compensation goals. 92 N.J. at 397, 456 A.2d 518. Unlike the decision being analyzed in *Mirza,* *Uston* was not a case involving an injured plaintiff seeking compensation. *Uston* sought only injunctive relief, specifically, a court order permitting him to play blackjack in Resorts' casino. Hence, compensation was neither an issue in *Uston* nor an element of its decision and, accordingly, there are no compensation ends to be furthered by giving it retroactive effect.

In the next portion of its analysis, the court in *Mirza* noted that the new decision's goal of assuring that property owners maintain safe sidewalks is not one that could be furthered by applying the decision to events of mismaintenance and injury that had already occurred. 92 N.J. at 397, 456 A.2d 518. Similarly, in the instant case, *Uston* 's principal objective of disallowing a casino authority to exclude card counters, unless permitted by a valid Commission regulation, would not be furthered by giving *Uston* retroactive effect.

Consequently, it does not appear that the aims underlying *Uston* would be hampered by limiting that decision to a prospective effect. In addition to considering *Uston* 's goals and the impact upon them should *Uston* be denied retroactive effect, the Court must consider the reasonableness of Harrah's reliance on the rule preexisting *Uston*, which permitted casinos to exclude card counters. Here, that reliance appears to have been entirely reasonable. It was founded on the opinion and order of the Casino Control Commission, which is the administrative body statutorily charged with responsibility for regulating and policing the casino industry. Although that decision had been reversed by the Appellate Division of the New Jersey Superior Court, it was still temporarily in effect as of the date of Mrs. Hoagburg's exclusion. Therefore, when Harrah's acted to exclude her it had ample basis to support its belief that it was legally entitled to continue its policy of excluding card counters, at least until the New Jersey Supreme Court rendered its decision in the matter.

Finally, the Court must consider what effect a retroactive application of *Uston* would have on the administration of justice. It appears clear that any such application would generate an immense amount of litigation. Prior to the time *Uston* was decided, there existed an industry-wide policy among New Jersey casinos of excluding card counters. *Uston*, 89 N.J. at 167 n. 2, 445 A.2d 370. Moreover, placing liability on casinos for acts done in reliance on an order and opinion of the Casino Control Commission would place casino operators in the precarious position of being without authority to conduct their business in any manner but that condoned by the Commission and yet unable to rely with confidence on Commission rulings as to what conduct was and was not permissible.

▮ As the foregoing analysis demonstrates, each of the relevant factors militate in favor of finding *Uston* to be without retroactive effect. Accordingly, the Court will not apply *Uston* to the case at bar.

The plaintiffs have put forward no argument to support their partial summary judgment motion, based on Mrs. Hoagburg's common law right of entry, other

than to argue that *Uston* compels liability in this case. The Court having rejected that argument, the plaintiffs' motion for summary judgment shall be denied.

Based on the foregoing rulings, the defendant's motions for partial summary judgment shall be granted with respect to the defamation and civil rights causes of action pleaded in Counts 6 and 8 of the complaint, respectively. The defendant's motion for partial summary judgment as to claims based on Mr. Hoagburg's asserted physical or psychological injuries shall also be granted. The motion by defendant for summary judgment regarding plaintiffs' demands for punitive damages shall be granted as to Counts 6 and 8, but shall be denied as to Counts 3, 4, 5, 9, and 10. Plaintiffs' motion for partial summary judgment as to the false arrest cause of action asserted in Count 5 of the complaint shall be denied. The Court shall file the appropriate order.