766 A.2d 1206 (2001)
337 N.J. Super. 331
Cooper PITTS, Plaintiff-Respondent,
v.
NEWARK BOARD OF EDUCATION, Defendant,
and
Joseph Parlavecchio, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted January 31, 2001.
Decided February 23, 2001.
*1208 Evangeline V. Tutt, for appellant.
Hunt, Hamlin & Ridley, Newark, for respondent (Ronald C. Hunt, of counsel and on the brief).
No other parties participated in this appeal.
Before Judges KEEFE and EICHEN.
*1207 The opinion of the court was delivered by EICHEN, J.A.D.
This is an action brought under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3 (the Tort Claims Act). Defendant Joseph Parlavecchio appeals a judgment in favor of plaintiff Cooper Pitts following a jury verdict that awarded plaintiff $10,000 in punitive damages on his defamation cause of action.[1] We reverse.
The action stems from an altercation between plaintiff, the head custodian at the Dayton Street Grammar School in Newark, and defendant, the principal of the school. The incident culminated in defendant's filing of a criminal complaint against plaintiff alleging criminal trespass based on plaintiff's alleged refusal to leave the school building. At trial, plaintiff contended that "the filing of a criminal complaint [is] ... defamation per se" and that defendant acted with "malice" in filing the complaint. On appeal, he argues that the allegation of criminal trespass set forth in the complaint is a defamatory statement and constitutes slander per se.
These are the material facts. On June 23, 1993, defendant summoned plaintiff to his office for a meeting to address the recurring problem of access to school supplies. On days when plaintiff was absent, he often failed to leave the keys to supply rooms in a designated "key closet," thereby preventing defendant, or a replacement custodian, from accessing the supply areas. Two assistant principals were present during the meeting. Defendant suggested to plaintiff that plaintiff would be required to store his keys in the principal's office.
Plaintiff and defendant presented two disparate versions of what transpired after defendant explained his dissatisfaction with the situation. Defendant and an assistant principal testified that plaintiff refused the principal's suggestion and became "defiant," "loud," and "overly aggressive," refusing to surrender his keys, and stating that he "didn't have to answer to anybody." They claimed plaintiff was so loud he could be heard in the main office and in the hallways. Defendant testified that plaintiff "started to rant and rave and scream and yell," stating that he did not have to listen to defendant. Defendant described plaintiff as "very agitated," "extremely hostile," and "quite aggressive." According to defendant, after he informed plaintiff that he would not tolerate his behavior, plaintiff "started throwing profanities at me." Defendant claims he then ordered plaintiff to surrender his keys, leave his office, and report to Custodial Services, which was located off-premises, but that plaintiff refused. Plaintiff then left defendant's office "ranting and raving," and returned to his office in the school's basement. Believing plaintiff had refused to leave the building and that he was potentially violent, defendant summoned the police, who upon arrival, arrested and handcuffed plaintiff, leading him out the front of the building while students and teachers watched. Thereafter, at police insistence, defendant signed a criminal complaint against plaintiff charging him with criminal trespass.
Plaintiff denied that he refused to surrender the keys to defendant, denied defendant's description of his conduct as hostile, and denied that he was ever ordered *1209 to leave the building. He also presented witnesses who testified to his mild demeanor and disposition. He further testified that he felt humiliated by the treatment accorded him by defendant and had to seek medical attention because he was so upset. Accordingly, he filed a counter-complaint in the municipal court against defendant alleging harassment. Both complaints were later withdrawn.
Subsequently, plaintiff filed a complaint in the Law Division in which he named the Newark Board of Education (the Board) and Parlavecchio as defendants. The complaint alleged malicious prosecution (count one), defamation (count two), and intentional infliction of emotional distress (count three). Defendants filed an answer denying the allegations and asserting a variety of defenses including the immunities under sections N.J.S.A. 59:3-2a and b and 59:3-8 of the Tort Claims Act. After the Board was dismissed from the action on its motion for summary judgment, a trial was commenced before a jury. At the close of plaintiff's proofs, defendant moved for an involuntary dismissal on the ground that there was insufficient proof to support any of plaintiff's claims. The court dismissed only count three,[2] and defendant proceeded to present his evidence on the remaining counts.
The jury returned a no cause verdict on count one, but found defendant liable on the defamation count, awarding plaintiff punitive damages of $10,000, but no compensatory damages.[3]
On appeal, defendant argues that the judge erred (1) in submitting the defamation count to the jury because no defamatory statement was made by defendant; (2) in failing to charge the jury on the immunities available to public employees under the Tort Claims Act, N.J.S.A. 59:3-2a and b and 59:3-8; and (3) in submitting the malicious prosecution claim to the jury.
We address first defendant's argument that the defamation claim should not have been submitted to the jury because plaintiff did not allege a defamatory statement by defendant. Plaintiff's defamation claim was based solely on defendant's filing of the criminal complaint which he contends falsely accused him of criminal trespass. Defendant counters that irrespective of the truth or falsity of the allegations in the complaint, such a complaint does not constitute a defamatory statement because the complaint is absolutely privileged.
Criminal complaints are absolutely privileged. Piper v. Scher, 221 N.J.Super. 54, 60, 533 A.2d 974 (App.Div. 1987) (observing that defendant was entitled to dismissal of a defamation claim because the plaintiff based it "solely upon the criminal complaints filed against her which were absolutely privileged") (citing Lone v. Brown, 199 N.J.Super. 420, 426, 489 A.2d 1192 (App.Div.1985)); see also Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 558, 117 A.2d 889 (1955); Restatement (Second) of Torts § 587 (1977). Such complaints are privileged in order to protect the public interest in freedom of access to the courts. Id. at § 587 comment a; see also Piper, supra, 221 N.J.Super. at 60, 533 A.2d 974. "One who publishes a slander that [falsely] imputes to another conduct constituting a criminal offense" commits slander per se. Restatement (Second) of Torts § 571 (1977). However, the filing of a criminal complaint containing the same false imputation exonerates the publisher from liability for defamation because of the absolute privilege. It is not that the statement is not defamatory, but that its publication is privileged. Of course, the party injured by the statement may still assert a claim for malicious prosecution based on the *1210 complaint. See id. at § 571 comment a. Plaintiff's reliance on Arturi v. Tiebie, 73 N.J.Super. 217, 179 A.2d 539 (App.Div. 1962), is misplaced because that case did not involve the filing of a criminal complaint, but only the making of a verbal statement accusing plaintiff of a crime.
Accordingly, based on the absolute privilege accorded defendant's filing of the criminal trespass complaint, the defamation claim should not have been submitted to the jury. Alternatively, defendant was entitled to a dismissal of the case at the close of plaintiff's proofs.[4]
Additionally, defendant was entitled to an involuntary dismissal at the close of plaintiff's proofs because plaintiff failed to prove actual damage to his reputation. Ordinarily, in the absence of slander per se, a plaintiff in a defamation case must demonstrate special damages in the form of proof of pecuniary or economic harm to his reputation. See Ward v. Zelikovsky, 136 N.J. 516, 542, 643 A.2d 972 (1994); see also Biondi v. Nassimos, 300 N.J.Super. 148, 153, 692 A.2d 103 (App. Div.1997); McLaughlin v. Rosanio, Bailets & Talamo, Inc., 331 N.J.Super. 303, 313, 751 A.2d 1066 (App.Div.2000). Plaintiff argues that because his claim is a slander per se claim, he did not have to demonstrate harm to his reputation or actual damages. We disagree.
As previously noted, this is not a slander per se situation, but even if defendant's pronouncement to the police that plaintiff had committed criminal trespass could be viewed as slander per se, plaintiff was still required to prove actual damages. That is because the potentially violent nature of the incident involved a matter of public concern, namely, the safety and well-being of the school children. In such a case, damages will not be presumed, and a plaintiff must prove actual damages. See Rocci v. Ecole Secondaire, 165 N.J. 149, 156, 755 A.2d 583 (2000) (holding that damages will not be presumed where the speech implicates a matter of public concern, namely, a teacher's care of her students). Therefore, the damages award cannot stand.
There is another reason why the damages award was improper. Punitive damages cannot be awarded in a tort action in the absence of an award of compensatory damages. See Smith v. Whitaker, 160 N.J. 221, 239, 734 A.2d 243 (1999) (observing that punitive damages award is improper where jury awarded $0 in compensatory damages). Here, the jury awarded plaintiff punitive damages without awarding any compensatory damages. Accordingly, the judgment awarding plaintiff $10,000 in punitive damages award must be reversed.
In addition, defendant is entitled to relief from the judgment because the judge failed to charge the jury on the qualified immunity under N.J.S.A. 59:3-8. The judge should have instructed the jury that, as a public employee, defendant could not be found "liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding [if he was acting] within the scope of his employment," N.J.S.A. 59:3-8, unless he acted with "actual malice." N.J.S.A. 59:3-14.
The trial judge declined defendant's request to charge the jury on this qualified immunity, apparently concluding that the immunity did not apply.[5] Instead, the judge determined it was sufficient to simply instruct the jury, along with the other elements required to prove a cause of action *1211 for defamation, that it would have to find defendant acted "maliciously" to find defendant liable.
In explaining the elements of defamation to the jury, the judge stated, in relevant part:
The next claim is with regard to defamation. In order that you findin order for you to find that plaintiff is entitled to recover damages from defendant for defamation, you must find by a preponderance of the credible evidence that defendant communicated to a person other than the plaintiff a false and defamatory statement of facts concerning the plaintiff and that defendant had actual knowledge that the statement was false or acted in reckless disregard of its truth or falsity. And that it was done maliciously, as I have previously defined maliciously. (Emphasis added)
On the malicious prosecution claim, the judge had instructed the jury:
The malice contemplated by this element is not malice in the sense that the word is sometimes used. The kind of malice I speak of means the intentional doing of a wrongful or unlawful act without just cause or excuse. Such malice is an intentional act which an ordinarily cautious man would realize that under ordinary circumstances damage would result to another person. And which does, in fact, damage another person. The element of malice may be inferred from a lack of reasonable or probable cause.
In defamation law, "actual malice" exists when a defendant has actual knowledge that the statement he is making is false, or when he entertains serious doubts as to its truth. Burke v. Deiner, 97 N.J. 465, 481, 479 A.2d 393 (1984) (quoting New York Times v. Sullivan, 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686, 706 (1964)). While the judge instructed the jury in accordance with this principle, by mistakenly referencing the definition of "malice" he had given as part of the charge on malicious prosecution, his instructions could only have confused and misled the jury as to the controlling legal principles for determining the element of "actual malice." Moreover, the instructions erroneously allowed the jury to improperly infer malice from a lack of reasonable or probable cause for the filing of the criminal trespass complaint.
The judge also mistakenly told the jury it could find "malice" on the part of defendant by the preponderance of the evidence, whereas the appropriate evidentiary burden is clear and convincing evidence. See Burke, supra, 97 N.J. at 481, 479 A.2d 393; see also Costello v. Ocean County Observer, 136 N.J. 594, 615, 643 A.2d 1012 (1994) ("[T]he clear and convincing standard in [a] defamation action adds an additional weight to the plaintiff's usual preponderance of the evidence burden."). By instructing the jury on the usual preponderance of the evidence burden of proof, the trial court ignored the clear mandate of the Supreme Court in Costello.
An appellate court may not disregard an erroneous jury charge if it was "clearly capable of producing an unjust result." R. 2:10-2. Because this charge was clearly capable of producing such a result, and, indeed, in our opinion, did produce such a result, we reverse the judgment on these grounds as well.
Lastly, we observe that the defamation claim should not have been submitted to the jury because no rational jury could draw from the evidence presented by plaintiff that defendant acted with "actual malice" in instituting the criminal proceedings against plaintiff. Essentially, this was defendant's argument when he sought an involuntary dismissal of plaintiff's complaint at the close of plaintiff's proofs. Courts should carefully screen proceedings to test whether "actual malice" has been demonstrated. Burke, supra, 97 N.J. at 482, 479 A.2d 393. Had that been done in this case, it is likely that the defamation claim would never have been submitted to the jury. In light of our decision herein, we need not address *1212 and resolve whether the trial judge erred in presenting the malicious prosecution claim to the jury.
Reversed and remanded for entry of judgment in favor of defendant.
NOTES
[1] The jury found in favor of defendant on the malicious prosecution claim.
[2] The judge found defendant had failed to support his claim of intentional infliction of emotional harm by medical evidence.
[3] Plaintiff had not sought compensatory damages on the defamation count because his theory of the case was that defendant had committed slander per se where ordinarily damages are presumed. See McLaughlin v. Rosanio, Bailets & Talamo, Inc., 331 N.J.Super. 303, 313, 751 A.2d 1066 (App.Div.2000).
[4] We recognize that defendant did not assert the absolute privilege in the Law Division as a ground for the dismissal of the complaint; however, the argument has been made and briefed on appeal and, accordingly, we address it.
[5] The judge apparently also rejected defendant's request for an instruction based on N.J.S.A. 59:3-2a and b, two of the discretionary immunities available to public employees under the Tort Claims Act. In view of our reversal based on the other reasons enumerated, we decline to resolve the applicability of these immunities to this case, except to observe that they likely do not apply. Cf. Denis v. City of Newark, 307 N.J.Super. 304, 704 A.2d 1003 (App.Div.1998).