849 A.2d 186 (2004)
369 N.J. Super. 384
Francis E. JOBES, Jr., Plaintiff-Respondent/Cross-Appellant,
v.
Albert EVANGELISTA, Pompton Lakes Volunteer Fire Department, Borough of Pompton Lakes and Sgt. Stephen Seifried, Defendants-Appellants/Cross-Respondents.
Gerald L. Rifenbark, Plaintiff-Respondent,
v.
Albert Evangelista, Pompton Lakes Volunteer Fire Department, Borough of Pompton Lakes, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued March 23, 2004.
Decided April 28, 2004.
*189 Francis X. Garrity, Montclair, argued the cause for appellant (Garrity, Graham, Favetta & Flinn, attorneys; June Garrity Glass, on the brief).
Daniel J. McCarthy, Cranford, and Christopher L. Troy, Philadelphia, PA, argued the cause for respondent Francis E. Jobes, Jr. (Rogue McCarthy, attorneys; Mr. McCarthy, on the brief).
Neil M. Cohen argued the cause for respondent Gerald L. Rifenbark (Gill & Cohen, attorneys; Mr. Cohen, on the joint brief filed by respondents).
Before Judges PRESSLER, PARKER and R.B. COLEMAN. *187
*188 The opinion of the court was delivered by PRESSLER, P.J.A.D. (retired and temporarily assigned on recall).
By these consolidated actions plaintiffs Francis E. Jobes, Jr. and Gerald Rifenbark each sought compensatory and punitive damages based on causes of action sounding in defamation, malicious prosecution and false-light invasion of privacy causes of action. The gravamen of their complaint was that defendant Albert Evangelista, the Chief of the Pompton Lakes Volunteer Fire Department,[1] without probable cause and with reckless disregard of the truth, had signed criminal complaints against each of them charging them with arson under N.J.S.A. 2C:17-1c (failure to control or report dangerous fire) and had granted interviews to the media in which he verbally repeated that accusation and elaborated on it with facts that were untrue.
Following a lengthy trial, the jury returned a verdict in favor of each plaintiff, awarding Jobes $250,000 on his defamation claim and $50,000 on his false-light and malicious prosecution claim and awarding Rifenbark $200,000 on his defamation claim and $600,000 on his false-light and malicious prosecution claim. Each plaintiff was also awarded punitive damages in the amount of $20,000. Defendant appeals, and plaintiffs cross-appeal with respect to punitive damages. We affirm the judgments entered upon the jury verdict in their entirety.
On October 27, 1997, a strip mall shopping center located in Pompton Lakes was completely destroyed by a fire which began in one of the anchor stores, an Acme supermarket. Because of the bow string wood truss construction of the shopping mall roof, the fire rapidly spread throughout the entire mall, making it impossible *190 for the volunteer fire department, which had quickly responded to the 911 call, to extinguish it. Plaintiffs were both Acme employees. Jobes was a customer service representative also acting as head cashier on the day of the fire. Rifenbark was the meat department manager. When the Acme opened for business at 7:00 a.m. on the day of the fire, John Visser, the grocery department manager, was in charge pending the 8:00 a.m. arrival of the store manager.
The proofs permitted the jury to find that when Jobes arrived at the store at about 7:00 a.m., he noticed that a set of lights was out and detected a smell of electrical burning, not an unusual occurrence as the store had been having recurring problems with the ballast of the fluorescent lighting system. Jobes informed Visser, who instructed him to call maintenance. As Jobes was doing so, he saw a flame coming from the lighting fixture. He immediately directed that the store be evacuated and called 911. As he was doing so, he saw Rifenbark standing on the register counter spraying the flame with a fire extinguisher handed to him by Visser. Believing the problem had been dealt with, Jobes nevertheless asked for an emergency response. The first fire engine arrived at about 7:20 a.m.
As to Rifenbark, when he first arrived at the store sometime before 7:00 a.m., he too smelled what he believed to be a burnt ballast but did not believe anything more unusual was happening and did not realize there was a problem until some minutes later when he climbed onto the register counter to check on the ballast. It was then that he saw a red glow in the ceiling and asked Visser for a fire extinguisher. After a second spraying from the extinguisher failed to put out the red glow, Rifenbark told Visser that they should also hasten to leave the store. By that time, the 911 call had already been made and the fire engines were on their way.
When the firefighters arrived, within minutes thereafter, the flames had already spread through the bow string roof covering the entire mall and its collapse was imminent. Although there was evidence suggesting that the fire, which had started in an Acme lighting fixture, may have been burning for a hour to an hour and a half before the 911 call was made, defendant Evangelista conceded that once it had started there was nothing that could have been done to contain it because of the roof construction.
Law enforcement officers both from the Passaic County Prosecutor's Office (PCPO) arson squad and the Pompton Lakes Police Department investigated the fire. The report of Detective Seifried of the Pompton Lakes Police Department included a summary of his conversation at the scene of the fire with Rifenbark, generally of the tenor heretofore indicated. Jobes, on the advice of Acme's lawyers, did not speak with Seifried. The PCPO's arson squad report was prepared by Senior Investigator Powell, who relied on arson squad notes made at the scene and who also interviewed Jobes by telephone. Powell's report included the information furnished by both Jobes and Rifenbark. It was Powell's conclusion that the fire had been entirely accidental, its rapid spread was due to the roof construction, and that the case file should be closed. Her recommendation was concurred in by the chief assistant prosecutor, the commander of the major crimes unit, and the arson squad's original investigator.
Defendant Evangelista was not, however, satisfied, apparently believing that someone had to be blamed for the fire and the consequent loss of the shopping mall. In reviewing both Seifried's report and Powell's report and noting some slight *191 time discrepancies respecting the Acme employees' arrival at the store, he came to the conclusion that there had been a failure of proper reporting of the fire. He asked Detective Seifried to research the law for him. Seifried responded by giving him a copy of the police department charging manual. The manual correctly described the elements of N.J.S.A. 2C:17-1c, the fourth-degree crime of failing to control or report a dangerous fire. That statute reads as follows:
A persons who knows that a fire is endangering life or a substantial amount of property of another and either fails to take reasonable measures to put out or control the fire, when he can do so without substantial risk to himself, or to give prompt fire alarm, commits a crime of the fourth degree if:
(1) He knows that he is under an official, contractual, or other legal duty to prevent or combat the fire; or
(2) The fire was started, albeit lawfully, by him or with his assent or on property in his custody or control.
Based solely on Seifried's report and on his conversation with him, Evangelista decided that Jobes and Rifenbark were in control and custody of the Acme store and should be criminally charged under that statute.
The jury was at liberty to conclude from the evidence that Seifried's report was largely based on hearsay and was, in several significant respects, inaccurate. Nevertheless, Evangelista chose to rely on it to the exclusion of all other available sources of information. He did not seek the advice of the PCPO arson squad, or any other member of the Prosecutor's Office, or the municipal attorney, or any other lawyer or municipal official. He did not himself interview either of the plaintiffs and was, apparently, not concerned by the fact that Seifried had also not interviewed Jobes or the fact that it was Visser, not either plaintiff, who was in charge of the store at the time. Nor, apparently, was he concerned about the precise time that either plaintiff realized or should have realized that there was a fire emergency or about the lapse of time from that realization until the 911 call was made. Rather, Evangelista simply asked Seifried to prepare criminal complaints against both plaintiffs, which he, Evangelista, then signed as Chief of the Fire Department.
Both plaintiffs were arrested, fingerprinted, and eventually released on their own recognizance. There was considerable local media coverage of the criminal charges based on information given the press by Evangelista, information, largely inaccurate and inculpatory of plaintiffs. In any event, about three weeks after the charges were filed and publicized, they were dismissed because of the Prosecutor's refusal to proceed with them. There was, in fact, evidence that the Prosecutor had called both Seifried and Evangelista to remonstrate with them for filing the charges under what he told them was a patently inapplicable statute and in circumstances in which there was no reasonable suggestion of criminality. Finally, although the charges were outstanding for less than a month, both plaintiffs testified to the damage caused them and their reputations as a result of being subject to criminal proceedings and being blamed, as a matter of criminal liability, for so extensive a loss of property. It suffices to say that both plaintiffs required psychiatric therapy to deal with the severe emotional distress each suffered and continued to suffer.
As noted, the jury found defendant Evangelista liable for malicious prosecution, false-light invasion of privacy, and defamation. Defendant challenges the liability verdict as to all three causes of *192 action as well as the damages verdict, which he contends is excessive, was based on an erroneous charge to the jury, and was contrary to the limitations of the Tort Claims Act, N.J.S.A. 59:1-1, et seq.
Before addressing these challenges, we consider defendant's claim that in respect of all these causes of action, he was entitled to qualified immunity under the Tort Claims Act, N.J.S.A. 59:1-1, et seq., and hence that the trial judge erred in denying his motion, made under R. 4:37-2(b) for dismissal of the complaint at the close of plaintiff's proofs.
Defendant's claim of qualified immunity is based primarily on N.J.S.A. 59:3-3, which reads in full as follows:
A public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.
We are in full agreement with the trial judge's analysis respecting the applicability of that statutory immunity. In sum, Judge Brogan was of the view that actual malice, as defined by New York Times v. Sullivan[2] as an utterance made with knowledge of its falsity or with reckless disregard of whether it was false or not, was not only an element of plaintiffs' substantive causes of action as to which they had demonstrated a prima facie case but was also dispositive of the qualified immunity issue. That analysis comports with Burke v. Deiner, 97 N.J. 465, 475-477, 479 A.2d 393 (1984), in which the Supreme Court made clear that in a defamation case the qualified privilege of a non-constitutional public officer is lost by actual malice as defined by New York Times. Simply put, good faith as a condition of the qualified immunity afforded by N.J.S.A. 59:3-3 and actual malice in the New York Times sense are mutually exclusive. The jury was, moreover, instructed, with respect to the defamation cause of action, that actual malice had to be found by clear and convincing evidence, and the appropriate definitions of actual malice were also given to the jury in respect of the malicious prosecution and false-light causes of action. The jury's finding of defendant's liability on these causes of action was necessarily, therefore, based on its findings of actual malice, and those findings, in turn, necessarily and directly resulted in contradiction of defendant's claim of good faith upon which his assertion of qualified immunity depended.
We are further satisfied that the jury's actual-malice finding resulted in defendant's loss of the immunity granted by N.J.S.A. 59:3-8, which provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment." See Pitts v. Newark Bd. of Ed., 337 N.J.Super. 331, 338-339, 766 A.2d 1206 (App.Div. 2001), making clear that that immunity too is lost by actual malice.
We address now defendant's specific objections to Judge Brogan's rulings respecting each of the substantive causes of action. As to the defamation cause, defendant contends that his motion for dismissal was erroneously denied, claiming that plaintiffs had failed to prove actual malice in the New York Times sense, that they also failed to prove specific pecuniary or reputational damage, and that the judge erred in permitting the jury *193 to find presumed damages. As to the malicious prosecution cause, defendant asserts that plaintiff failed to prove the elements of absence of probable cause and actual malice, that the trial judge erred by submitting the probable cause issue to the jury, by permitting plaintiffs to adduce expert testimony on that issue, and by barring his expert from testifying. He also challenges the damages verdict. Finally, he claims that plaintiffs failed to prove a prima facie case of false-light invasion of privacy. We reject each of these arguments.
We consider first the defamation cause of action. With respect to the actual malice component of the defamation cause of action, required to be proved by clear and convincing evidence, it is clear that New Jersey follows the New York Times standard of knowledge of falsity or reckless disregard for the truth, further defining reckless disregard for the truth as a high degree of awareness of its probable falsity or serious doubts as to the truth of the statement. See, e.g., Lynch v. New Jersey Educ. Ass'n, 161 N.J. 152, 165, 735 A.2d 1129 (1999); Ricciardi v. Weber, 350 N.J.Super. 453, 472, 795 A.2d 914 (App. Div.2002), certif. denied, 175 N.J. 433, 815 A.2d 479 (2003); Gray v. Press Communications, L.L.C., 342 N.J.Super. 1, 11, 775 A.2d 678 (App.Div.), certif. denied, 170 N.J. 390, 788 A.2d 774 (2001). Judge Brogan was satisfied that plaintiffs had met that standard sufficiently to submit the issue to the jury, and we agree. As we have pointed out, defendant relied only on Seifried's report without having himself spoken to either plaintiff or conducted any kind of investigation. Beyond that, he made statements to the press purporting to be the actual facts surrounding the fire, which were not in Seifried's report and had no basis in any information available to defendant, including the assertion that both plaintiffs had waited fifty-eight minutes after the fire started to call it in, that customers already in the store had smelled something burning and had asked plaintiffs to call the fire department, that if the 911 call had been made at 6:20 a.m., when Rifenbark was asserted to have arrived at the store, the fire could have been extinguished, and, obviously, the implication, entirely false, that both plaintiffs were aware of the fire or should have been substantially aware before the 911 call was made. We think it plain that this complex of false statements squarely asserted plaintiffs' criminal liability, if not for the fire itself, then surely for the extent of the property loss.
We also reject defendant's challenges to the defamation damages allowed by the jury. We are first satisfied that Judge Brogan correctly instructed the jury with respect to presumed damages. It is clear that ordinarily the slandered plaintiff is required to prove "special damages in the form of pecuniary or economic harm to his reputation." Ricciardi v. Weber, supra, 350 N.J.Super. at 475, 795 A.2d 914. It is also clear that neither plaintiff adduced such proofs. But as we further held in Ricciardi, this "element of the slander plaintiff's prima facie case is waived if the statement is deemed slander per se, because damage to reputation is presumed to flow from such statements." Ibid. It is also well settled that accusation of criminal conduct constitutes slander per se. Ibid.; McLaughlin v. Rosanio, Bailets & Talamo, Inc., 331 N.J.Super. 303, 314, 751 A.2d 1066 (App.Div.2000); Biondi v. Nassimos, 300 N.J.Super. 148, 154, 692 A.2d 103 (App.Div.1997). We are aware that in Rocci v. Ecole Secondaire, 165 N.J. 149, 755 A.2d 583 (2000), the Supreme Court modified the presumed-damages rule where the defamatory utterance involves a matter of public concern, and we acknowledge that the Pompton Lakes fire was *194 such a matter. But the Court nevertheless made clear in Rocci, that in effecting the balance between private reputational interest and free speech relating to matters of public concern, the presumed-damages rule will continue to obtain if the defamatory utterance was attended by actual malice in the New York Times sense. 165 N.J. at 156, 755 A.2d 583. The jury's actual malice finding here subsumed, therefore, its right to accord and plaintiff right to receive presumed damages. We therefore affirm the judgment entered on the jury's verdict respecting defamation.
With respect to the malicious prosecution cause of action, it is clearly settled that it requires proof of four elements, the defendant's institution of a criminal action against the plaintiff; the defendant's motivation by malice; the absence of probable cause; and termination of the action favorably to the plaintiff. As noted, only actual malice and probable cause are in dispute. We think it plain that the actual malice component of the cause of action is properly defined, as Judge Brogan defined it for the jury, as the intentional doing of a wrongful act without just cause or excuse. See, e.g., Muller Fuel Oil Co. v. Ins. Co. of No. Amer., 95 N.J.Super. 564, 576, 232 A.2d 168 (App.Div.1967). In a substantial sense, therefore, malice is inferable from the finding that the defendant had neither probable cause for the criminal complaint nor a reasonable belief in probable cause.
We are, moreover, satisfied that the question of probable cause was properly submitted to the jury. While we agree with defendant that the existence of probable cause is ordinarily a question of law, nevertheless, it becomes a mixed question of law and fact when the underlying facts, as here, are in dispute. See, e.g., Helmy v. City of Jersey City, 178 N.J. 183, 191, 836 A.2d 802 (2003); Liptak v. Rite Aid, Inc., 289 N.J.Super. 199, 215, 673 A.2d 309 (App.Div.1996).
We are also satisfied that the trial judge did not abuse his discretion in permitting plaintiffs' two probable-cause experts to testify. One had served as fire chief in various cities and counties and as a management consultant for a number of fire departments and testified as an expert in the standards and protocols applicable to the conduct and performance of fire chiefs not merely in firefighting but in administrative matters as well. The other expert was a licensed private detective and public safety director who had daily experience with probable cause issues. The sum of their testimony was that the statute defendant had relied on was wholly inapplicable to plaintiffs' circumstances respecting the fire, and neither the report of Powell or of Seifried provided defendant with sufficient probable cause to make the criminal complaint, and that defendant had acted recklessly as a fire chief, a law enforcement officer, and an ordinary citizen. Judge Brogan was persuaded that the testimony of these witnesses, given their background and experience, would assist the jury in determining the factual issues involved in determining whether defendant had probable cause for making the complaints, that is, a well-grounded suspicion that plaintiffs had committed a crime. See, e.g., State v. Dangerfield, 171 N.J. 446, 456, 795 A.2d 250 (2002). We agree that the conditions for allowing expert testimony prescribed by N.J.R.E. 702 were clearly met.
The barring of defendant's proffered probable-cause expert was also, in our view, a reasonable discretionary determination. The report was woefully late despite the extension of discovery, and we affirm that decision for the reasons stated *195 by Judge Brogan in denying defendant's new trial motion.
Defendant's challenge to the malicious prosecution damages is based on his assertion that plaintiffs failed to meet the threshold of N.J.S.A. 59:9-2d, which provides that:
No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00. For purposes of this section medical treatment expenses are defined as the reasonable value of services rendered for necessary surgical, medical and dental treatment of the claimant for such injury, sickness or disease, including prosthetic devices and ambulance, hospital or professional nursing service.
The issue, of course, is whether the actual malice component of each of the three causes of action relieved plaintiffs of the restrictions of the statutory pain and suffering threshold. We agree with Judge Brogan that they were so relieved by reason of N.J.S.A. 59:3-14b, providing that "[n]othing in this act shall exonerate a public employee from the full measure of recovery applicable to a person in the private sector if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct."
We think it plain that the "actual malice" proviso of N.J.S.A. 59:3-14b encompasses actual malice as an element of plaintiffs' three causes of action. We are also in full agreement with the holding of Taglieri v. Moss, 367 N.J.Super. 184, 196, 842 A.2d 280 (App.Div.2004), that the threshold limitations of N.J.S.A. 59:9-2d do not apply to such causes. See also Delacruz v. Borough of Hillsdale, 365 N.J.Super. 127, 147, 838 A.2d 498 (App. Div.), certif. granted, 179 N.J. 370, 845 A.2d 1253 (2004), similarly holding with respect to the good-faith exoneration of a public employee accorded by N.J.S.A. 59:3-3. And compare Velez v. City of Jersey City, 358 N.J.Super. 224, 239-240, 817 A.2d 409 (App.Div.), certif. granted, 177 N.J. 224, 827 A.2d 291 (2003), with Bonitsis v. New Jersey Inst. of Tech., 363 N.J.Super. 505, 519, 833 A.2d 679 (App. Div.2003). Consequently, we are persuaded that plaintiffs were relieved of the limitations of N.J.S.A. 59:9-2d by reason of the jury's finding of actual malice.
As to the third cause of action, false-light invasion of privacy, we need merely note that New Jersey has recognized that cause of action since Romaine v. Kallinger, 109 N.J. 282, 293, 537 A.2d 284 (1988). See also Restatement (Second) of Torts, § 652A. Defendant claims that plaintiffs failed to prove a prima facie case and that the trial court erred in its instructions to the jury. These claims are based essentially on the same arguments on which defendant relied in challenging the defamation and malicious prosecution verdicts, and we reject them for essentially the same reasons for which we sustained those verdicts.
Defendant raises various other challenges to the verdict, including the contentions that the jury should not have been able to consider plaintiff Jobes' future medical expenses, that plaintiffs' attorneys made improper comments during summation, that the court erred in instructing the jury on actual malice during the punitive damages phase of the trial, that plaintiffs failed in their burden to prove punitive damages, and that the *196 damages awards, both compensatory and punitive, were excessive. We are satisfied from our review of the record and the applicable law that none of these issues is of sufficient merit to warrant disposition by written opinion. See R. 2:11-3(e)(1)(A), (B), (C), and (E).
The gravamen of plaintiffs' crossappeal is the assertion that the trial judge erred in not advising the jury during the punitive damages phase of the trial that defendant was being indemnified by the Borough and hence that it was the Borough's resources, rather than defendant's, which were relevant to the admeasurement of exemplary damages. The short answer to this argument rests upon Lockley v. State of N.J. Dept. of Corrections, 177 N.J. 413, 430, 828 A.2d 869 (2003), in which the Supreme Court held that the financial condition of a public entity is not admissible in evidence when punitive damages are sought against it. If not admissible when the public entity is the defendant, such proofs are, a fortiori, not admissible when the public entity is only the indemnitor. We are also satisfied that the Borough's insurance coverage for punitive damages in the circumstances was appropriately not regarded as an asset of Evangelista. We therefore affirm the punitive damage award as well as the denial of plaintiffs' additur motion.
The judgment appealed from under Docket No. A-6657-01T3 is affirmed in its entirety. The appeal under Docket No. A-89-02T3 is dismissed with prejudice and without costs by reasons of the parties' stipulation.
NOTES
[1] The complaint against the other named defendants, the Volunteer Fire Department, the Borough of Pompton Lakes, and a law enforcement officer, Sgt. Stephen Seifried, was dismissed by summary judgments entered prior to trial. Plaintiffs appealed from those orders of dismissal under Docket No. A-89-02T3, and we consolidated that appeal with this appeal. Thereafter, however, plaintiffs stipulated to the withdrawal of A-89-02T3, and, accordingly, we hereby dismiss the appeal under that Docket Number with prejudice and without costs.
[2] New York Times v. Sullivan, 376 U.S. 254, 279-280, 84 S.Ct. 710, 725-726, 11 L.Ed.2d 686, 706 (1964)