883 A.2d 411 (2005)
380 N.J. Super. 552
Kevin KELLY, Plaintiff-Appellant,
v.
COUNTY OF MONMOUTH, Monmouth County Board of Chosen Freeholders, and Alain Fortier, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 2005.
Decided October 12, 2005.
*413 Danielle S. Chandonnet argued the cause for appellant (Shebell & Shebell, attorneys; Ms. Chandonnet, on the brief).
Linda Grasso Jones argued the cause for respondents County of Monmouth and Monmouth County Board of Chosen Freeholders (Cleary, Alfieri, Jones & Hoyle, attorneys; Ms. Jones, on the brief).
Barbara L. Birdsall, Neptune, argued the cause for respondent Alain Fortier (Stout & O'Hagan, attorneys; Ms. Birdsall, on the brief).
Before Judges ALLEY, C.S. FISHER and YANNOTTI.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, we consider, among other things, whether a public employee who commits either an assault or battery upon a fellow employee is entitled to the benefit of the New Jersey Tort Claims Act's verbal threshold, N.J.S.A. 59:9-2, when sued for damages. While we affirm the dismissal of all plaintiff's other claims, there remain unresolved questions of fact pivotal to determining whether the individual defendant may take refuge behind the verbal threshold in these circumstances, and reverse and remand for further proceedings.

I
Plaintiff Kevin Kelly, a Monmouth County employee assigned to the County's buildings and grounds department, filed this action against the County, the Board of Chosen Freeholders, and Alain Fortier, the supervisor of the County's reclamation center.
Kelly asserted in his complaint and explained in his deposition testimony that, upon his arrival at the reclamation center with a delivery on March 7, 2000, he was greeted by Fortier, who took off a work glove, asked Kelly how he was doing, and offered his right hand. As they shook hands, Fortier commented that Kelly had "a pretty good grip," and squeezed Kelly's hand even harder, causing Kelly to more *414 forcefully grip Fortier's hand. Fortier then said, "you got some kind of handshake," and "you are some kind of man." According to Kelly, who described this event as a "testosterone type thing," Fortier then grabbed at Kelly's crotch, causing Kelly to step back while he shoved Fortier in the chest with his elbow.
Fortier denies that he grabbed Kelly's genitals, as Kelly alleged, but that, instead, he extended his left hand toward Kelly's lower body, without making contact, in an effort to loosen Kelly's grip. Because summary judgment was entered against Kelly, we are required to assume the truth of his allegations and not Fortier's conflicting version of this event. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).

II
The trial judge rendered a lengthy oral decision in summarily dismissing all Kelly's causes of action. While the complaint contained seven counts, Kelly seeks our reversal only of those parts of the summary judgment orders of February 5, 2004 and March 2, 2004 that dismissed his claim of what he refers to as a common law assault, as well as his claim of "same sex" harassment prohibited by the Law Against Discrimination, N.J.S.A. 10:5-1 to -42.
In his brief, Kelly asserts the following two arguments for our consideration:
I. APPELLANT'S CASE SHOULD PROCEED TO A JURY WHEN PRIMA FACIE EVIDENCE OF AN ASSAULT IS PRESENTED TO THE COURT.
II. APPELLANT'S CLAIM UNDER THE NEW JERSEY LAW AGAINST DISCRIMINATION FOR SAME SEX HARASSMENT SHOULD BE ALLOWED TO PROCEED TO A JURY.
We affirm the decision challenged by Kelly in Point II substantially for the reasons set forth in the trial judge's oral decision, and we also affirm the summary judgment entered in favor of the County and the Board of Chosen Freeholders insofar as Kelly sought relief against them for the alleged assault or battery.[1] Insofar as the assault and battery claim was based upon a theory that Fortier acted negligently, the trial judge recognized that Kelly had pursued a workers' compensation claim for his alleged injuries and, thus, is precluded from pursuing a common law claim against Fortier for negligence occurring in the workplace. N.J.S.A. 34:15-8; Volb v. G.E. Capital Corp., 139 N.J. 110, 117, 651 A.2d 1002 (1995). And, to the extent that Fortier's alleged actions could be viewed as willful, we conclude that the trial judge correctly held that the County and its Board of Chosen Freeholders could not be held liable because N.J.S.A. 59:2-10 immunizes public entities from suits based upon the willful acts and omissions of their employees. However, we reverse the summary judgment that dismissed Kelly's assault and battery claims insofar as Kelly sought relief only against defendant Fortier, for the following reasons.

III
As indicated, we conclude that the trial judge correctly granted summary judgment dismissing all Kelly's claims against the County and its Board of Chosen Freeholders, but we reject the arguments urged by Fortier in seeking our affirmance of the dismissal of the assault and battery claim asserted against him in his individual *415 capacity. Assuming, as he must, that the facts asserted by Kelly are sufficient, for summary judgment purposes, to support a claim that Fortier intentionally grabbed or attempted to grab Kelly's genitals, Fortier argues (a) that, because he and Kelly were engaged in "horseplay," it must be assumed that Kelly consented to being so touched by Fortier, or (b) that, because he asserts the alleged injuries are insubstantial, Kelly's claim is barred by the Tort Claims Act's verbal threshold, N.J.S.A. 59:9-2.

A
We reject Fortier's invitation that we limit the scope of Kelly's common law assault and battery claims by applying a "horseplay" defense, which we interpret as Fortier's shorthand way of contending that Kelly consented to the alleged assault or battery.
Our Supreme Court has said that "[a]ny non-consensual touching is a battery," and that such a cause of action is established by "proof of an unauthorized invasion of the plaintiff's person, even if harmless." Perna v. Pirozzi, 92 N.J. 446, 460-61, 457 A.2d 431 (1983); see also Russo Farms, Inc. v. Vineland Bd. of Educ., 144 N.J. 84, 105, 675 A.2d 1077 (1996). While contact is essential to the cause of action, the intent required is satisfied "not only if the defendant intends a harmful contact, or an offensive contact, upon the plaintiff ... (all of which are battery-type consequences) but also if the defendant intends only to cause apprehension that such a contact is imminent (an assault-type consequence)." Prosser and Keeton, The Law of Torts (5th ed., 1984) § 9 at 39. The interest protected by the attachment of liability to a non-consensual touching extends "to any part of the body, or to anything which is attached to it and practically identified with it." Ibid. That is, a finding of battery may be satisfied by a non-consensual touching of "the plaintiff's clothing, or with a cane, a paper, or any other object held in the plaintiff's hand,... [or] of the chair in which the plaintiff sits, the horse or the car the plaintiff rides or occupies, or the person against whom the plaintiff is leaning." Id. at 39-40.
The element of "personal indignity" is also given great weight in considering the sufficiency of a plaintiff's allegations. Id. at 41. Consequently,
the defendant is liable not only for contacts which do actual physical harm, but also for those relatively trivial ones which are merely offensive and insulting. Spitting in the face is a battery, as is forcibly removing the plaintiff's hat, or any other contact brought about in a rude and insolent manner.... The plaintiff is entitled to demand that the defendant refrain from the offensive touching, although the contact results in no visible injury.
[Id. at 42 (footnotes omitted).]
In considering Fortier's "horseplay" argument in this context, we observe that liability for a battery will attach even when a defendant intends "only a joke." Ibid.; see also Caudle v. Betts, 512 So.2d 389, 391-92 (La.1987); Newman v. Christensen, 149 Neb. 471, 31 N.W.2d 417, 419 (1948).
A person is "entitled to protection according to the usages of decent society, and offensive contacts, or those which are contrary to all good manners, need not be tolerated." Prosser and Keeton, supra, at 42. In accordance with these principles, we have held that a non-consensual touching of a woman's breast or buttocks constitutes a battery. Aly v. Garcia, 333 N.J.Super. 195, 205 n. 2, 754 A.2d 1232 (App.Div.2000), certif. denied, 167 N.J. 87, 769 A.2d 1050 (2001). Likewise, we hold *416 that the alleged touching of defendant's genitals represents a similar type of contact that constitutes a battery in the absence of consent.
We further conclude that because Fortier may have believed his conduct constituted "horseplay" or a joke does not mean that we must assume Kelly viewed what transpired in the same way. Indeed, the record, viewed in the light most favorable to Kelly, suggests only that he consented to shake Fortier's hand and, perhaps, consented to firmly shake Fortier's hand. But it does not follow, and we similarly interpret Kelly's deposition testimony, that by agreeing to shake hands Kelly intended to extend his consent to being touched by Fortier to areas below his waist or to otherwise expand the zone of consensual touching beyond a traditional handshake. Ultimately, in such uncertain circumstances, it must be left to the factfinder, and not a judge at the summary judgment stage, to determine whether the circumstances may be interpreted to mean that a plaintiff consented to the extenuation of the alleged joking conduct, see Wartman v. Swindell, 54 N.J.L. 589, 590, 25 A. 356 (E. & A. 1892),[2] or whether, "according to the usages of decent society," this non-consensual touching is something to be tolerated in our "crowded world." Prosser and Keeton, supra, at 42. If not, then the cause of action for the non-consensual touching will have been established.[3]
Accordingly, to the extent that Fortier alleges that he and Kelly were engaged in "horseplay," we conclude that this contention should not have been resolved by way of summary judgment.[4]

*417 B
Fortier argues that to maintain the assault and battery claims against him, Kelly must vault the verbal threshold contained in N.J.S.A. 59:9-2. The trial judge implicitly agreed with this legal contention and found, also, that Kelly's personal injury claims failed to exceed the verbal threshold's requirements. While we acknowledge there are circumstances in which a public employee is entitled to the protections of the verbal threshold even when the public employer is entitled to immunity, DelaCruz v. Bor. of Hillsdale, 183 N.J. 149, 870 A.2d 259 (2005), we reject the contention that a public employee is always entitled to the protection of the verbal threshold when the employer is immune but the employee is not. Instead, we conclude that in circumstances in which the public employee acts willfully or beyond the scope of his employment, the verbal threshold must not be applied. This conclusion is compelled by the very terms of the Tort Claims Act.
N.J.S.A. 59:2-10 declares that a public entity cannot be held liable  and N.J.S.A. 59:3-14(a) declares that the public employee is not exonerated from his or her liability  when a public employee engages in willful misconduct. In considering the extent of a public employee's liability in that circumstance, the Legislature announced in N.J.S.A. 59:3-14(b) that nothing in the Act "shall exonerate a public employee from the full measure of recovery applicable to a person in the private sector if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." Thus, if it can be shown that Fortier willfully committed an assault or battery upon Kelly, or to the extent it can be shown that his tortious conduct exceeded the scope of his employment, the application of the verbal threshold is precluded, as we have held in similar contexts. See Jobes v. Evangelista, 369 N.J.Super. 384, 399-400, 849 A.2d 186 (App.Div.2004); Taglieri v. Moss, 367 N.J.Super. 184, 196, 842 A.2d 280 (App. Div.2004).
The parties did not refer us to N.J.S.A. 59:3-14(b) or our decisions in Jobes and Taglieri. They also did not refer us to the Supreme Court's recent decision in DelaCruz, supra, 183 N.J. 149, 870 A.2d 259, where the Court rejected our holding in that case. DelaCruz v. Bor. of Hillsdale, 365 N.J.Super. 127, 838 A.2d 498 (App.Div.2004). In DelaCruz, we held that the verbal threshold should not apply to claims against individual police officers for false arrest and false imprisonment. In reversing, the Supreme Court held that "[t]he clear terms of the Tort Claims Act require that all claims  including those for false arrest and false imprisonment  must vault the verbal threshold in order to be cognizable." 183 N.J. at 164-65, 870 A.2d 259 (emphasis added). However, despite the expansive tone of this holding, indicating there are types of tort claims other than false arrest and false imprisonment claims to which the verbal threshold will apply, we find the present circumstances are distinguishable and warrant a different result because the police officers in DelaCruz were arguably acting under color of law, and thus arguably within the scope of employment, when they falsely arrested and imprisoned the plaintiff. Accordingly, we find nothing in the Court's holding in DelaCruz that would suggest the verbal threshold would also apply to *418 tort claims asserted against a public employee when the public employee not only acts willfully, or within the terms of N.J.S.A. 59:3-14(b), but also, unlike DelaCruz, outside the scope of employment.
We are satisfied, as we held in Jobes and Taglieri, that the Legislature intended to preclude the application of the verbal threshold to claims against public employees that are based upon willful misconduct, or conduct outside the scope of employment. As the 1972 Task Force Comment to N.J.S.A. 59:3-14 states: "It is the intent of this provision that a public employee guilty of outrageous conduct cannot avail himself of the limitations as to liability and damages contained in this act." Thus, while DelaCruz's broad language might be misconstrued otherwise, we conclude that the Court did not intend to require the application of the verbal threshold to the conduct here in question. Indeed, unlike the circumstances in DelaCruz, we can discern no societal interest that would be promoted by insulating a person from the full consequences of intentional torts arising from conduct beyond the scope of employment, which do not generate substantial personal injuries, merely because that individual happens to be employed by a public entity.
As we have observed, Kelly's claim against Fortier is based upon the latter's willful conduct. If Kelly can prove the elements of this cause of action, then the verbal threshold cannot be applied as the means of either limiting or eliminating his opportunity to recover damages. Whether Fortier so acted, however, could not be determined by way of summary judgment since Fortier denied that he engaged in the conduct alleged. The trial judge recognized that he could not determine, in light of the disputed facts, that Fortier's alleged willful conduct did occur, but he held that, because the injuries claimed were insubstantial, the verbal threshold barred recovery. Since this premise was mistaken, summary judgment should not have been granted in Fortier's favor.
In addition, as N.J.S.A. 59:3-14(b) indicates, Kelly may recover on this cause of action if he can show that Fortier acted outside the scope of his employment. An employee will be viewed as acting at his own peril, and not on the employer's account, when he engages in tortious conduct that is not "reasonably connected with the employment." Abbamont v. Piscataway Bd. of Educ., 138 N.J. 405, 419, 650 A.2d 958 (1994); Hill v. N.J. Dep't of Corrections, 342 N.J.Super. 273, 306, 776 A.2d 828 (App.Div.2001), certif. denied, 171 N.J. 338, 793 A.2d 717 (2002). What types of conduct are "reasonably connected" to one's employment necessarily turns on the factual circumstances.
Here, as is conceded, Kelly was making a delivery to the reclamation center where Fortier was the supervisor. It makes sense, and we assume for present purposes, that a greeting between these parties would fall within the scope of Fortier's employment. By the same token, it is arguable that when this handshake evolved into a "testosterone type thing," it exceeded the scope of employment. Where the bounds of employment began and ended, however, represents a question of fact that could not, on this record, be safely resolved by way of summary judgment. While we seriously doubt that the event, as described by Kelly, could reasonably be held to fall within the scope of employment, the matter is better left open for further consideration, particularly in light of the fact that the parties have yet to have an opportunity  due to their misconception about the applicable legal framework  to analyze their factual disputes in light of N.J.S.A. 59:3-14(b) or the decisions, cited above, that have interpreted *419 this statute. We do not foreclose the possibility that other evidence might be available which would permit the entry of a summary judgment that Fortier acted either within or without the scope of his employment.
We lastly observe that the verbal threshold applies only to claims of pain and suffering and not other elements of damages: "the effect of the verbal threshold is limited to pain and suffering claims; economic or consequential damages are not limited by the [Tort Claims] Act." DelaCruz, supra, 183 N.J. at 164, 870 A.2d 259. The application of the verbal threshold, and the consequence of a plaintiff's failure to vault it, also do not preclude an award of nominal or punitive damages in circumstances where the tort is intentional and beyond the scope of employment. Nominal or punitive damages have traditionally been held available upon the commission of a common law assault or battery. Perna, supra, 92 N.J. at 461, 457 A.2d 431; Blackmore v. Ellis, 70 N.J.L. 264, 266, 57 A. 1047 (E. & A.1904).[5]
To summarize, Kelly has claimed that the alleged conduct resulted in personal injuries and we have concluded that he is entitled to pursue a remedy for the alleged assault and battery even if his alleged personal injuries are too insubstantial to meet the requirements of the verbal threshold so long as Fortier's conduct is proven to be willful or beyond the scope of his employment. Moreover, to the extent Kelly has sought  or may in the future be permitted to seek  economic, consequential, nominal or punitive damages, then the verbal threshold will have no relevance to his claim for those types of damages.

IV
We affirm the summary judgment in all respects except we reverse that part of the summary judgment that dismissed Kelly's assault and battery claims against Fortier and remand for further proceedings in conformity with this opinion. We do not retain jurisdiction.
NOTES
[1] While Kelly continually refers to these allegations as supporting a claim of "assault," we assume that within that rubric Kelly's theory of recovery also includes a cause of action for an alleged battery.
[2] In Wartman, plaintiff's clerk drove plaintiff's horse and carriage to the sheriff's office and tied the horse to a post at the curb. While the clerk was in the sheriff's office, defendant took the lines from the horse and refused to return them. Plaintiff commenced suit. When plaintiff rested his case, the trial judge charted a pragmatic course and urged defendant to return the lines and, upon defendant's compliance, dismissed the action, deeming the matter de minimis non curat lex. The Court of Errors and Appeals interpreted what had occurred at trial as suggesting that the judge "acted upon the idea that the conduct of the defendant was intended as a joke," but held that "[i]f the defendant relied upon the fact that he removed the lines by way of a joke, it was a question for the jury to decide whether the parties had been perpetrating practical jokes upon each other in such a way that the defendant had a right to believe that the plaintiff would accept this act as a joke." 54 N.J.L. at 590, 25 A. 356. To the extent that Fortier would have us view his alleged grabbing of Kelly's genitals in the same manner, our response is the same as the Court's in Wartman  it is a matter for the jury to resolve.
[3] As can be seen, while in his complaint and all other filings Kelly has referred to Fortier's actions as an "assault," we interpret his factual allegations as asserting the common law tort of battery, because he alleges actual contact and not an impairment of his "interest in freedom from apprehension of a harmful or offensive contact," as the common law tort of assault has been defined. Prosser and Keeton, supra, § 10 at 43. As stated in this leading treatise, "[a]ssault and battery go together like ham and eggs," id. at 46, and, thus, our analysis would be no different if the proofs were to reveal that no actual touching occurred but that, instead, Fortier only reached but did not make contact.
[4] To the extent that Fortier's argument should be interpreted as asserting that because what occurred between Kelly and Fortier could be viewed, in a worker's compensation context, as "horseplay," see N.J.S.A. 34:15-7.1, the common law causes of action of assault and battery are not maintainable. So viewed, this contention also fails to support the summary judgment entered. Indeed, even if we were to find some merit in so labeling this alleged conduct, we note that, in the workers' compensation context, an act of horseplay that causes injury does not always preclude the employee's right to workers' compensation remedies. See Diaz v. Newark Indus. Spraying, Inc., 35 N.J. 588, 174 A.2d 478 (1961); Trotter v. Monmouth County, 144 N.J.Super. 430, 365 A.2d 1374 (App.Div.), certif. denied, 73 N.J. 42, 372 A.2d 308 (1976). Thus, this analogy provides no logical framework for absolving Fortier of his alleged willful conduct.
[5] We note in this regard that Kelly's complaint may be interpreted as having failed to include a demand for nominal or punitive damages, and it is not clear to us whether his opposition to summary judgment clarified whether Kelly was seeking economic or consequential damages that also would not be precluded by the verbal threshold. We recognize that these observations, and the significance of such claims, may result, following our remand, in Kelly moving to amend the complaint's ad damnum clause. We intimate no view as to whether such an amendment ought to be allowed.