**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2075-20

IAN M. SCHWEIZER,

     Plaintiff-Appellant,

v.

NEW JERSEY STATE POLICE,
COLONEL PATRICK J.
CALLAHAN, LIEUTENANT
CHRISTOPHER GHILON,
LIEUTENANT J. WIDOVIC,
TROOPER K.M. BUONOMO,
SERGEANT BRIAN E. WEISS,
DETECTIVE GREGORY C.
LEWIS, DETECTIVE SERGEANT
MATTHEW M. MCCURRY,
DETECTIVE SHANE D. KRISANDA,
DETECTIVE DARREN CRANE,
SERGEANT D. O'KEEFFE,
DETECTIVE MULLER, and
DETECTIVE M. HERRICK,

     Defendants,

and

DETECTIVE JUSTIN J.
DELORENZO,

     Defendant-Respondent.

_____

Submitted March 16, 2022 – Decided September 8, 2022

Before Judges Gilson and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1733-19.

Hanlon Dunn Robertson, attorneys for appellant (Wayne G. Perry, on the briefs).

Flahive Mueller, Attorneys at Law, LLC, attorneys for respondent (John P. Mueller, on the brief).

PER CURIAM

Plaintiff Ian Schweizer appeals from the February 23, 2021 Law Division order granting summary judgment to defendant, Detective Justin DeLorenzo, and dismissing Schweizer's complaint with prejudice. The complaint alleged DeLorenzo committed constitutional and statutory violations as well as various torts in connection with arresting and charging Schweizer with a criminal offense. In dismissing the complaint, the motion judge determined DeLorenzo was entitled to qualified immunity. We affirm.

2

A-2075-20

We derive the following facts from evidence the parties submitted in support of and opposition to the summary judgment motion. "At the summary judgment stage, in deciding the issue of qualified immunity, our jurisprudence requires that the evidence be viewed in the light most favorable to [the plaintiff]." Baskin v. Martinez, 243 N.J. 112, 119 (2020).

According to the undisputed facts in the record, on February 7, 2017, Schweizer voluntarily appeared at a New Jersey State Police station for questioning regarding an alleged sexual assault in a bar parking lot. About a week earlier, a woman reported to DeLorenzo that Schweizer had put his hand down the front of her pants and touched her without her consent after the two had met for a date. During the February 7 interview, Schweizer acknowledged he had touched the woman and that she became upset and abruptly fled. Schweizer sent an apologetic text message to the woman hours later saying "[he] got carried away."

Upon concluding there was probable cause to arrest, DeLorenzo took Schweizer into custody and then contacted the Sussex County Prosecutor's Office (SCPO) to present the results of his investigation. After reviewing the evidence, members of the SCPO informed DeLorenzo that it had decided not to

prosecute based on deficiencies in the proofs. Nonetheless, DeLorenzo subsequently sought a complaint-warrant for Schweizer's arrest, which a municipal court judge issued after determining there was probable cause. The following day, a Superior Court judge dismissed the charges at the SCPO's request and released Schweizer.

Thereafter, Schweizer filed a complaint against the New Jersey State Police and several of its members, including DeLorenzo. The complaint alleged violations of the New Jersey Constitution and New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to 6-2, false arrest, false imprisonment, malicious prosecution, malicious abuse of process, and negligent hiring, supervision, and retention. Schweizer's initial complaint also included a 42 U.S.C. § 1983 claim for violation of his rights under the Fourth and Fourteenth Amendments of the federal constitution, but he abandoned that claim in his first amended complaint.

Defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted. See R. 4:6-2(e). After concluding that Schweizer had failed to allege sufficient facts to undercut their qualified immunity, the motion judge dismissed the complaint against the individual defendants, except for DeLorenzo. The judge allowed the lawsuit against DeLorenzo to proceed, reasoning that DeLorenzo would not be entitled to

4

qualified immunity if he had not informed the municipal court judge that the SCPO had already declined to prosecute prior to DeLorenzo seeking the warrant.

Subsequently, DeLorenzo moved for summary judgment and submitted a transcript of an internal affairs interview with the municipal court judge, in which the judge acknowledged that prior to issuing the warrant, DeLorenzo had informed him the SCPO had declined to prosecute. Additionally, the municipal court judge acknowledged being unclear about whether the SCPO's decision not to prosecute precluded him from making a probable cause determination. Nonetheless, after reviewing the detective's submissions, the judge issued the warrant upon determining that "the standard for probable cause" was "clearly met."

On February 22, 2021, during oral argument on the motion, plaintiff's counsel asserted that "no discovery" had been conducted in the matter and the defense had delayed producing the interview transcript. Additionally, plaintiff's counsel argued that the internal affairs interview was "one-sided" and that Schweizer should have the opportunity to depose the municipal court judge. Defense counsel responded that the defense had attempted to engage plaintiff in discovery, but Schweizer had "completely ignored" their discovery requests.

5

In an order entered on February 23, 2021, the motion judge granted DeLorenzo summary judgment, concluding he was entitled to qualified immunity. In an accompanying written statement of reasons, the judge first addressed the arguments plaintiff's counsel raised at oral argument about incomplete discovery. The judge observed that there was no mention of discovery issues in Schweizer's opposition brief and that Schweizer had made no discovery requests in two years since filing the complaint. Additionally, the judge noted that although discovery was set to close six days after oral argument, Schweizer still had not requested an extension of the discovery end date or specified what discovery was outstanding. Accordingly, the judge found no reason to deny defendant summary judgment because of discovery concerns.

On the merits, the judge determined DeLorenzo was entitled to qualified immunity because he had not violated any of Schweizer's "clearly established" rights and had acted with probable cause. First, the judge acknowledged that the Attorney General had issued Attorney General Law Enforcement Directive No. 2016-6, Directive Establishing Interim Policies, Practices, and Procedures to Implement Criminal Justice Reform Pursuant to P.L. 2014, c. 31 (the Directive), which went into effect about a month before Schweizer's arrest.

The Directive provided, in pertinent part:

> Except as . . . otherwise . . . authorized[,] . . . no application for a complaint-warrant for any [indictable] crime or offense shall be submitted to a judicial officer authorized to approve a complaint-warrant, without the express approval of an assistant prosecutor or deputy attorney general . . . .

The judge reasoned that the Directive was too new at the time of Schweizer's arrest to be considered "clearly established," as evidenced by the municipal court judge's and DeLorenzo's "confus[ion] as to the application of the new rules to the facts and circumstances presented by this case."

Further, the judge concluded the Directive did not "clearly establish a statutory or constitutional right" for the benefit of plaintiff because the Directive was "an internal procedure document for [l]aw [e]nforcement [o]fficers" and was "not meant to, and [did] not create, a constitutional right upon which . . . plaintiff [could] rely in order to sustain his private cause of action." The judge added:

> Nor is the Directive a statutory right. It is not even a regulation that is promulgated pursuant to established procedures that allow for provisions to be established that have the force of law. The Directive is only an internal policy statement to give guidance and direction to the law enforcement community. It is not issued with the consent or endorsement of the State Legislature or even the Governor. It simply does not contain the legal gravitas that warrants rewarding the Directive with the force of law so as to create a private right for a plaintiff to rely upon to base a cause of action.

7

In that regard, under the sub-heading "NON-ENFORCEABILITY BY THIRD PARTIES," the Directive specified that its "provisions d[id] not create any promises or rights that may be enforced by any other persons or entities" and "[n]othing in th[e] Directive shall be construed in any way to create any rights beyond those established under the Constitutions of the United States and the State of New Jersey, or under any New Jersey statute or Court Rule."  The judge pointed out that "[a] police officer who violates a Directive, knowingly or even perhaps unknowingly, is properly subject to a disciplinary proceeding," as plaintiff asserted occurred here.  However, "[t]hat circumstance d[id] not conversely create a 'clearly established constitutional right' upon which a [p]laintiff can rely in order to sustain a viable cause of action."

Next, the judge determined that DeLorenzo had probable cause to apply for the warrant and that it was "objectively reasonable" for DeLorenzo to rely on the municipal court judge's probable cause determination.  According to the judge, based on DeLorenzo's investigation, DeLorenzo had sufficient evidence to support a probable cause affidavit.  Citing State v. Amelio, 197 N.J. 207, 213 (2008), the judge stated that in establishing probable cause, "[i]t has been held that a statement of a victim can be taken at face value irrespective of other evidence concerning reliability."

A-2075-20

Moreover, after reviewing the internal affairs interview transcript, the judge found that the municipal court judge was "fully informed" of the SCPO's position "before issuing the warrant." In that regard, the judge stated:

> In fact, with regards to a probable cause determination, [the municipal court judge] as a "neutral magistrate" found that it was clear that probable cause existed and he didn't believe that, in all candor, the [SCPO] could even say that there was not probable cause. [The municipal court judge] opined that the decision not to prosecute was made based on their assessment of the quality of the case, not the absence of probable cause.

The judge concluded Schweizer could not show DeLorenzo had acted in "bad faith" to overcome DeLorenzo's qualified immunity defense. In support, the judge explained:

> [I]t has been shown that DeLorenzo provided [the municipal court judge] with a full account of the circumstances surrounding [p]laintiff's case. [The municipal court judge] has confirmed as much. In fact, there is no evidence that DeLorenzo made statements to [the municipal court judge] that he knew were false; or would have known were false had he not recklessly disregarded the truth. The fact that [DeLorenzo] firmly believed that a charge should be made or even that his actions could be characterized as zealous, those characterizations do not mean that he acted in bad faith. While officers must be discouraged from acting in bad faith, [c]ourts should respect a law enforcement [officer's] passionate belie[f] that a victim's rights should be vindicated. These circumstances should not expose the officer for damages based upon cla[i]ms of "bad faith."

In this ensuing appeal, Schweizer raises the following points for our consideration:

POINT I

THE TRIAL COURT'S ENTRY OF SUMMARY JUDGMENT WAS PREMATURE AND PRODUCED AN UNJUST RESULT AS PLAINTIFF WAS NOT PERMITTED TO COMPLETE DISCOVERY INCLUDING THE RIGHT TO CROSS-EXAMINE THE TESTIMONY OF [THE] MUNICIPAL COURT JUDGE . . . AND THEREFORE REVERSAL IS PROPER.

POINT II

ASSUMING ARGUENDO THAT THE TRIAL COURT'S ENTRY OF SUMMARY JUDGMENT WAS NOT PREMATURE, THE TRIAL COURT NONETHELESS ERRED IN ITS FINDING THAT DETECTIVE DELORENZO WAS ENTITLED TO QUALIFIED IMMUNITY.

II.

We "defer to a trial judge's discovery rulings absent an abuse of discretion or a judge's misunderstanding or misapplication of the law." Cap. Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017). "A motion for summary judgment is not premature merely because discovery has not been completed, unless plaintiff is able to 'demonstrate with some degree of particularity the likelihood that further discovery will supply the missing

elements of the cause of action.'" Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (quoting Wellington v. Est. of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003)). Additionally, the party opposing summary judgment on discovery grounds "must specify what further discovery is required." Trinity Church v. Lawson-Bell, 394 N.J. Super. 159, 166 (App. Div. 2007).

Here, we are satisfied the motion judge did not abuse his discretion in proceeding without additional discovery. Plaintiff's counsel raised the issue of additional discovery for the first time at oral argument on the summary judgment motion and only made general arguments about the need to depose the municipal court judge because the internal affairs interview was "one-sided." Moreover, after oral argument, Schweizer had an opportunity to move to extend the discovery end date and particularize his reasons but failed to do so. Therefore, we discern no abuse of discretion in the judge's discovery ruling and no basis to interfere with the judge's determination that DeLorenzo's summary judgment motion was ripe for disposition.

## III.

Turning to the merits, "we review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente

De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). That standard is well-settled.

> [I]f the evidence of record – the pleadings, depositions, answers to interrogatories, and affidavits – "together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted.
>
> [Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016) (citations omitted) (quoting R. 4:46-2(c)).]

See also Baskin, 243 N.J. at 129 (explaining that, on review, "we are required not only to view the evidence in the light most favorable to [the non-moving party], but also to draw all reasonable inferences in his favor that are supported by the summary judgment record").

"Whether an official is entitled to the shield of qualified immunity ordinarily is a question of law to be decided by the court." Baskin, 243 N.J. at 128. "We review issues of law de novo and accord no deference to the trial judge's conclusions on issues of law." MTK Food Servs., Inc. v. Sirius Am. Ins. Co., 455 N.J. Super. 307, 312 (App. Div. 2018). Thus, we review de novo the trial court's determination that a defendant is entitled to qualified immunity. Ramos v. Flowers, 429 N.J. Super. 13, 20 (App. Div. 2012).

12

We begin with a discussion of Schweizer's tort claims, which are governed by the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. The TCA grants public employees qualified immunity for certain tort claims, declaring that "a public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. 59:3-3. "'To prevail on a motion for summary judgment, a public employee need not establish his subjective, i.e., actual, good faith if his conduct was objectively reasonable.'" Brayshaw v. Gelber, 232 N.J. Super. 99, 110 (App. Div.1989) (quoting Hayes v. Mercer Cnty., 217 N.J. Super. 614, 622 (App. Div. 1987)).

Additionally, the TCA provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment." N.J.S.A. 59:3-8. However, the TCA does not "exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." N.J.S.A. 59:3-14. Thus, a public employee whose conduct involves actual malice, meaning "the intentional doing of a wrongful act without just cause or excuse," loses qualified immunity under the TCA. Jobes v. Evangelista, 369 N.J. Super. 384, 398 (App. Div. 2004); see also N.J.S.A. 59:3-14.

"[M]alice is inferable from [a] finding that the [official] had neither probable cause for the criminal complaint nor a reasonable belief in probable cause." Jobes, 369 N.J. Super. at 398. However, "probable cause is an absolute defense" and defeats claims for false arrest, false imprisonment, and malicious prosecution. Wildoner v. Borough of Ramsey, 162 N.J. 375, 389 (2000); see also Tarus v. Borough of Pine Hill, 189 N.J. 497, 521 (2007) (same); Mesgleski v. Oraboni, 330 N.J. Super. 10, 24-25 (App. Div. 2000) (same). "Probable cause to arrest can be based on the statement of a witness . . . ." Wildoner, 162 N.J. at 390.

Turning to Schweizer's NJCRA claim, the NJCRA authorizes civil suits against individuals "acting under color of law" who deprive any person of "any substantive rights, privileges or immunities secured by the Constitution or laws of this State." N.J.S.A. 10:6-2(c). However, the doctrine of qualified immunity shields law enforcement officers and other government officials "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Morillo v. Torres, 222 N.J. 104, 116 (2015) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In that regard, "qualified immunity 'is an

immunity from suit rather than a mere defense to liability' [and] is effectively lost if the case is allowed to go to trial." Wildoner, 162 N.J. at 387.

"The well-established defense of qualified immunity interposes a significant hurdle for plaintiffs seeking to recover for asserted violations of civil rights at the hands of law-enforcement officials." Morillo, 222 N.J. at 116. Following federal case law, our courts employ a two-pronged test to determine if a law enforcement officer is entitled to qualified immunity: "(1) whether the evidence, viewed in the light most favorable to the plaintiff, establishes that the official violated the plaintiff's constitutional or statutory rights, and (2) whether the right allegedly violated was 'clearly established' at the time of the officer's actions." Baskin, 243 N.J. at 128 (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001), modified, Pearson v. Callahan, 555 U.S. 223 (2009)).

A right is clearly established if "a reasonable officer in the same situation clearly would understand that his actions were unlawful." Morillo, 222 N.J. at 118. "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" Plumhoff v. Rickard, 572 U.S. 765, 779 (2014) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). Said differently, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public

official should know the law governing his conduct." Harlow, 457 U.S. at 818-19. Thus, "the doctrine 'protects all officers but the plainly incompetent or those who knowingly violate the law.'" Morillo, 222 N.J. at 118 (quoting Connor v. Powell, 162 N.J. 397, 409 (2000)).

The New Jersey Constitution guarantees individuals the right to be free from unreasonable seizures. N.J. Const. art. I, ¶ 7. Consequently, "[a]n arrest – the most significant type of seizure by police – requires probable cause and generally is supported by an arrest warrant or by demonstration of grounds that would have justified one." State v. Rosario, 229 N.J. 263, 272 (2017). "Probable cause relies on the facts of the individual case and 'is more than mere suspicion, but less than legal evidence necessary to convict.'" Mesgleski, 330 N.J. Super. at 26 (quoting State v. Mark, 46 N.J. 262, 271 (1966)).

Qualified immunity is applied "to civil rights claims brought against law enforcement officials engaged in their discretionary functions, including arresting or charging an individual based on probable cause to believe that a criminal offense has occurred." Morillo, 222 N.J. at 117. An official can claim qualified immunity "by demonstrating either that he or she acted with probable cause, or that a reasonable law enforcement officer could have believed there

was probable cause." Mesgleski, 330 N.J. Super. at 26 (citing Kirk v. City of Newark, 109 N.J. 173, 184 (1988)).

"Law enforcement officers are not entitled to immunity 'if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'" Morillo, 222 N.J. at 118 (quoting Wildoner, 162 N.J. at 386). However, "[i]f officers of reasonable competence could disagree on the issue of probable cause, the doctrine of qualified immunity should be applied." Connor, 162 N.J. at 409. Thus, whether there was probable cause or whether there was qualified immunity, "[b]oth require application of the objective reasonableness standard of the Fourth Amendment without regard to the law enforcement officer's underlying motive or intent." Schneider v. Simonini, 163 N.J. 336, 366 (2000). An arrest "is reasonable 'regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify [the arrest]. The officer's subjective motivation is irrelevant.'" State v. Brown, 205 N.J. 133, 146 (2011) (quoting State v. O'Neal, 190 N.J. 601, 613-14 (2007)). Similarly, the officer's "'subjective beliefs about the [arrest] are irrelevant'" to qualified immunity, for which "absence of malice" is not an element. Schneider, 163 N.J. at 354-55 (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)).

Having carefully reviewed the record in light of these precedents, we are satisfied that DeLorenzo was entitled to qualified immunity and summary judgment and affirm substantially for the reasons stated by the motion judge. We agree with the judge that plaintiff failed to establish DeLorenzo violated plaintiff's "clearly established" constitutional or statutory rights because, under the circumstances, a reasonably competent officer could have concluded that a warrant could issue. The Directive neither established a statutory or constitutional right for plaintiff's benefit, nor did it create any rights beyond those established under the federal and state constitutions or state laws requiring the issuance of arrest warrants upon a finding of probable cause. Critically, notwithstanding the SCPO's position, DeLorenzo acted with probable cause, as validated by the municipal court judge's determination, and probable cause defeats plaintiff's tort claims. Although we do not condone DeLorenzo's disregard of the SCPO's decision not to prosecute, the remedy does not create a private cause of action for plaintiff or deprive DeLorenzo of qualified immunity. See Morillo, 222 N.J. at 124 ("The officers' right to the benefit of qualified immunity does not hinge on the soundness of the prosecutor's advice.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2075-20